392 A.2d 831

**COMMONWEALTH of Pennsylvania**

v.

**Jeffry Lee KIBE, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1976.

Decided Oct. 20, 1978.

---

* By the time of the continued hearing in September, however, he was in jail pending disposition of a new charge.

354

James D. Bogar, Assistant Public Defender, Carlisle, for appellant.

Edgar B. Bayley, District Attorney, Camp Hill, for Com., appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

On November 3, 1975, at about 11:20 P.M., Carrie Coulson left the Enola Hotel in Enola, and headed for the hotel's parking lot where her car was parked. From the hotel porch she saw a blue sedan pull into the parking lot. The driver of the blue sedan parked it four or five cars away from the spot in which Mrs. Coulson's car was parked. At that time, Mrs. Coulson saw no other activity in the parking lot.

Leaving the hotel porch, Mrs. Coulson walked into the parking lot and approached her car. She heard a car door slam and footsteps approaching from behind her. As she reached the rear of her automobile the footsteps were close behind. Because her car was locked, she turned to check the source of the footsteps. At that point, her testimony recites that:

A  I turned around and seen a person in back of me about an arm's length away.

(Brief pause taken off the record.)

MR. BAYLEY: Would you just read the answer back to that last question, the last question and answer.

(Question and answer referred to read back by reporter.)

BY MR. BAYLEY:

Q  A man or a woman?

A  A man.

Q  At that point when you observed this man, had you ever seen him before to your knowledge?

A  No.

Q  What occurred next?

A  He asked me if that car was mine, and I says yes. He says get in it, and I said no, I'm not.

And then he started to fool around with the front of his pants, and then I just screamed.

Q  When you screamed, what occurred next?

A  Well, he hit me in the face around the nose.

Q  Do you know what portion of his body hit you, did you see the blow coming?

A  No.

Q  When you were hit, what happened to you?

A  I fell down on my back, and then I got up and ran into the Enola Hotel.  (NT 10–11)

And on cross-examination, on the same time interval her testimony was:

Q Were you afraid at the time you heard the footsteps?

THE COURT: You mean when she first heard them?

MR. SPRENGLE: Yes.

A You mean when I first heard the footsteps—

BY MR. SPRENGLE:

Q When you heard someone coming up behind you, were you frightened?

A Not at first, no.

Q Did you happen to notice if there was a moon out that night?

A No.

THE COURT: You mean no, you didn't notice or no, there was no moon?

A I didn't notice.

BY MR. SPRENGLE:

Q You say as you heard these footsteps, you turned around and you saw the defendant at arm's length, is that all correct?

A Yes.

Q He then said what to you?

A He asked me if this was my car, and I says yes.

Q Then you said he said get in?

A He says well, get in it, and I says no.

Q He then began to fool with his pants?

A Yes.

Q Then you immediately screamed?

A I screamed, yes.

Q Do you remember what flashed through your mind when you screamed, why you screamed?

MR. BAYLEY: I object, it's obvious. I object to the form of the question.

THE COURT: I don't think that that is a proper objection because her answer may be obvious. I will permit her to answer.

Why did you scream?

A Because the first thing I thought of was the idea that he was going to rape me when I seen him fooling around with his pants. (NT 28–29)

When Mrs. Coulson screamed, appellant hit her in the face, which resulted in the victim's falling to the ground. Mrs. Coulson suffered a fractured nose. Appellant was convicted of aggravated assault[1] on February 12, 1976, and appeals his conviction.

The sole issue of merit argued by appellant is that a fractured nose does not constitute the "serious bodily injury" required for a conviction of aggravated assault. We disagree.

It is true that in *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978), the supreme court held that where the victim of a punch to the nose did not actually sustain the requisite serious bodily injury, there the injury also being a fractured nose, a conviction for aggravated assault could not be sustained because there was insufficient evidence, direct or circumstantial, from which an intent to inflict serious bodily injury could be inferred. There the only direct evidence of appellant's intent was his testimony to the effect that he did not intend to seriously injure the victim. The supreme court explained, "We hasten to add that a simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault." 477 Pa. at 194, 383 A.2d at 889.

In our opinion the facts in the instant case present sufficient additional circumstances to support the aggravated assault conviction, and therefore *Commonwealth v. Alexander, supra* does not control.

1. 18 Pa.C.S. § 2702(a)(1).

Where a lone woman is approached at a late hour from the rear without warning by a male, ordered into her car, put in fear of an impending rape, and upon her refusal, struck with such force in the face as to fracture her nose, we hold that evidence sufficient to support a conviction for aggravated assault.

The appellant also argues that there was no probable cause to arrest and that the identification procedure was tainted. We find no merit to these arguments.

Judgment of sentence affirmed.

SPAETH, J., files a dissenting opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

The majority says:

Where a lone woman is approached at a late hour from the rear without warning by a male, ordered into her car, put in fear of an impending rape, and upon her refusal, struck with such force in the face as to fracture her nose, we hold that evidence sufficient to support a conviction for aggravated assault.

At 833.

This has a fine ring; it sounds right; but it isn't right, because it violates settled principles.

The majority recognizes that the blow that appellant gave his victim did not inflict "serious bodily injury" upon her. The majority is compelled to this recognition by the fact that the Crimes Code, 18 Pa.C.S.A. § 2301, defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Since here the blow did not inflict any such injury, the most it could amount to was a simple assault, defined by the Crimes Code, 18 Pa.C.S.A. § 2701(a), as being (among other sorts of simple assault) a

blow that "causes bodily injury to another." So far, so good. Then, however, the majority says that "surrounding circumstances"—a phrase it quotes from *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1977)—may convert simple assault into aggravated assault. This said, the majority proceeds to the passage quoted at the outset of this opinion, holding that here the "surrounding circumstances" were such that appellant's simple assault was converted into aggravated assault.

Before examining this reasoning I am obliged to admit that I am not sure I understand it. It seems reasonably clear, however, that the impulse behind the reasoning is the majority's decent and warn hearted concern for appellant's victim. "This woman", the majority seems to say, "was put into a perfectly frightful situation by appellant. That's enough for us to find aggravated assault."

This simply won't do; it defines appellant's criminal responsibility by looking at his conduct through the eyes of his victim. In adopting this reasoning the majority has proceeded backwards, or, to change the figure, on a course 180 degrees wrong. Appellant's criminal responsibility must be defined by looking at his conduct through *his* eyes, not his victim's.

To be sure, the law might have developed differently, and in a manner consistent with the attitude expressed by the majority. In other words: The law might have made criminal responsibility depend, not upon the intent, or *mens rea*, of the accused, but upon an *outside appraisal of his conduct*. That is the way the law of contracts has developed. If you say, "I accept your offer", you will be held bound to perform. Never mind what your private intent was. In defining contractual responsibility the law concentrates upon what the offeror was entitled to assume you meant. Restatement, Contracts, § 3, comment *a*; Calamari & Perillo, *Contracts*, § 12. So too with some aspects of the law of torts. As regards some torts, responsibility depends upon the actor's intent, for example, false imprisonment, where it must be shown that the actor "intend[ed] to confine the

other or a third person within boundaries fixed by the actor." Restatement Torts, Second, § 35(1)(a). Similarly with misrepresentation. Restatement Torts, Second, § 526. As regards other torts, however, responsibility depends upon an outside appraisal of the actor's conduct. For example, in defamation, the meaning of the communication will be "that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express." Restatement of Torts, Second, § 563. And in negligence, the standard of care will be that of the "reasonable man," which is to say, of "a person exercising those qualities of attention, knowledge, intelligence, and judgment which society requires of its members." Restatement of Torts, Second, § 283, Comment *b*. In fact, there is one instance in the criminal law in which responsibility depends not upon the intent of the accused, but upon an outside appraisal of his conduct. This instance arises when the legislature "attempt[s] to utilize the machinery of criminal administration as an enforcing arm for social regulations of a purely civil nature, with the punishment totally unrelated to questions of moral wrongdoing or guilt." *Commonwealth v. Koczwara*, 397 Pa. 575, 580, 155 A.2d 825, 827 (1959). Examples are pure food and drug acts, speeding ordinances, building regulations, child labor and minimum wage and maximum hour laws, and liquor codes. Thus a tavern owner may be held criminally responsible merely upon proof that a bartender in his tavern sold beer to an unaccompanied minor; evidence that the owner was not present, did not participate in, and did not know about, the sale will be held irrelevant. *Commonwealth v. Koczwara, supra.* This sort of criminal responsibility, however, is exceptional; not only is it limited to the field of "social regulations of a purely civil nature," but the legislature's intention to make proof of the intent of the accused irrelevant must be unmistakeably plain, and even then, the legislature may be proscribed from imposing imprisonment as punishment. *Commonwealth v. Koczwara, supra.* In general, a finding of criminal responsibility depends upon proof of the intent of the accused; and this principle has been so laboriously developed, and is so deeply ingrained in our law,

that a finding of criminal responsibility without such proof may be held to be a violation of due process. *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957); *Commonwealth v. Koczwara, supra.*

Accordingly, the question that must be addressed, and that the majority does not address, is this: When appellant inflicted the blow on his victim, what was his intent? In *Commonwealth v. Alexander, supra*, the Supreme Court made this point as follows:

> Where the injury actually inflicted did not constitute serious bodily injury [and here, as we have seen, and as the majority concedes, it did not], the charge of aggravated assault can be supported *only* if the evidence supports a finding that the blow delivered *was accompanied by the intent to inflict serious bodily injury.*

477 Pa. at 194, 383 A.2d at 889 (emphasis added).

Usually, the intent of the accused must be inferred from evidence of his actions, although sometimes there is evidence that he said something manifesting his intent. *Commonwealth v. Caye*, 465 Pa. 98, 348 A.2d 136 (1975); *Commonwealth v. Fostar*, 455 Pa. 216, 317 A.2d 188 (1974). Here I quite agree with the majority that from the evidence, both of what appellant did and of what he said, it may be inferred that appellant intended to rape his victim. That inference, however, far from supporting the majority's conclusion, destroys it; for appellant's intent to rape his victim was not, and could not be, the intent to inflict serious bodily injury on her. The intent to rape is to have forcible sexual intercourse with the victim. 18 Pa.C.S.A. § 3121. The intent to inflict serious bodily injury is to do an injury to the victim that creates a substantial risk of death, or disfigures or maims her. 18 Pa.C.S.A. § 2702(a); *Commonwealth v. Alexander, supra.* Since the Commonwealth produced no evidence from which it could be inferred that appellant intended to do serious bodily injury to his victim, the conviction of aggravated assault should be set aside. This does not mean, of course, that appellant should be discharged. The Commonwealth did prove simple assault, and the case should be remanded for imposition of sentence on that conviction.

This conclusion may very well leave one with the feeling that appellant would get off too easily. Obviously, that is the majority's feeling, and it would be easy to share it. Two comments, however, are in order.

First, a court must never assume the role, or the attitude, of a prosecutor. It would seem from the evidence that here the prosecutor might have charged appellant with attempted rape, which is a felony of the first degree, 18 Pa.C.S.A. §§ 3121, 901, and 905, as compared with aggravated assault, which cannot rise higher than a felony of the second degree, 18 Pa.C.S.A. § 2702. However, the prosecutor did not, and that being so, we must proceed within the boundaries of the charge as brought.

Second, and as a corollary to what has just been said, a court must never indulge in the feeling that whatever settled principle requires in *other* cases, in *this* case something more should be done. It is possible, I suggest, to conclude from its opinion that that is what the majority has done here. Rape is, without question, one of the most dreadful crimes; and attempted rape is almost as dreadful. This affords a court no excuse, however, for refusing to apply the Crimes Code, as enacted, and *only* as enacted. Here, the legislature has plainly defined what "serious bodily injury" means; it does not mean a simple assault inflicted in the course of an attempted rape. Given that definition, our part is to apply it, and not, out of a sense of outrage, to ignore it.

Recently, in *People v. Caudillo*, 21 Cal.3d 562, 146 Cal. Rptr. 859, 866, 580 P.2d 274, 281 (1978), the Supreme Court of California was confronted with a problem similar to the one we have here. The defendant had committed a burglary, in the course of which "he raped the victim twice, sodomized her and compelled her to orally copulate with him several times." 23 Cr.L.Rptr. at 2363. The question was whether this conduct had inflicted "great bodily injury" within the meaning of a statute that provided for an enhancement of the punishment for burglary whenever the victim suffered "great bodily injury." The statutory defini-

tion of "great bodily injury" was similar to that of "substantial bodily injury" in the Crimes Code.* The majority of the Court had no difficulty in concluding that this definition could not be "construed as including a rape victim's psychological and emotional trauma." 21 Cal.3d at 582, 146 Cal. Rptr. at 870, 580 P.2d at 286. In concurrence, the Chief Justice said this:

[P]ersonal repugnance toward these crimes cannot be a legitimate basis for rewriting the statute as it was adopted by the Legislature. It is precisely because emotions are so easily called into play in such situations that extra precaution must be taken so that this court follows the legislative intent and not our own predelictions or beliefs. This court has no choice in this matter.

21 Cal.3d at 589, 146 Cal.Rptr. at 875, 580 P.2d at 290.

The judgment of sentence should be vacated, and the case remanded with instructions to the lower court to enter a

---

* To quote the California Supreme Court:

Recently, the Legislature addressed itself to the problem of defining what constitutes "great bodily injury." * * * [S]ection 12022.7 was added to the Penal Code. Section 12022.7 supplants the specific great-bodily-injury provisions of Penal Code sections 213, 264 and 461 with their great-bodily-injury enhancement provisions, and is made applicable to all felonies which do not necessarily involve such injury. Under the statutory scheme of section 12022.7, as originally enacted in 1976, the level of injury necessary to trigger the additional penalty of three years in prison was spelled out in some detail: "As used in this section, 'great bodily injury' means a serious impairment of physical condition, which includes any of the following: (a) Prolonged loss of consciousness. (b) Severe concussion. (c) Protracted loss of any bodily member or organ. (d) Protracted impairment of function of any bodily member or organ or bone. (e) A wound or wounds requiring extensive suturing. (f) Serious disfigurement. (g) Severe physical pain inflicted by torture." * * *

Penal Code section 12022.7 was amended in 1977 to strike out the detailed definition of "great bodily injury" and substitute the following definition: "As used in this section, great bodily injury means a significant or substantial physical injury."

Thus it may be seen that the Legislature, while changing its mind with respect to a detailed definition of "great bodily injury" before that definition became effective, has now adopted a definition of "great bodily injury" that requires that the injury constitute a "significant or substantial physical injury," * * *
21 Cal.3d at 580, 146 Cal.Rptr. at 869, 580 P.2d at 284.

conviction of simple assault and to impose sentence accordingly.