406 A.2d 539

**COMMONWEALTH of Pennsylvania**

v.

**James GREGORY, Appellant.**

Superior Court of Pennsylvania.

Submitted March 20, 1978.

Decided June 15, 1979.

Marilyn J. Gelb, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Division, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PRICE, Judge:

Appellant was tried non-jury on the charges of robbery[1] (Bill No. 1479), criminal conspiracy[2] (Bill No. 1480), and aggravated assault and battery[3] (Bill No. 1481). Post-trial motions were considered and denied and judgment of sentence imposed. Sentence of 1½ to 5 years was imposed on the robbery count, 1½ to 5 years on the aggravated assault and battery to run concurrent to the first sentence, and sentence was suspended on the criminal conspiracy charge.

The main question presented for our consideration is whether the evidence is sufficient to support his conviction under the Crimes Code of aggravated assault.[4] This argument relies on *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978). This reliance is misplaced, and we affirm the judgments of sentence.

The victim of this aggravated assault and battery, although in fact a police officer, was seemingly an elderly visitor to the world famous "City of Brotherly Love." The date of the offense, October 6, 1976, occurred at a time when Pennsylvania was proudly promoting, and properly so, its part in the formation of this country, and urging visitation to the historical shrines in the Philadelphia area. This apparent bicentennial visitor was walking west on Wood Street. His hair was grey; he was wearing a hat, suit and

1. 18 Pa.C.S. § 3701.

2. 18 Pa.C.S. § 903.

3. 18 Pa.C.S. § 2702.

4. Appellant has filed a Pro Se Brief raising ineffective assistance of trial counsel for failure to challenge the arrest as unlawful, in that probable cause was lacking. Our recitation of the factual background reveals this claim to be frivolous.

tie; he had bus brochures hanging from his pocket; he was carrying a suitcase; and he was wearing an official Pennsylvania visitor's button.

In fact, he was Corporal Michael Lutz, assigned as part of a special unit of the Philadelphia Police Department. He was, in plain understanding, a decoy, and was being followed at a discreet distance by a back-up unit of other officers, including a police canine dog. This unit had been assigned to this work for the purpose of protecting Philadelphia's visitors.

As this apparent tourist walked along Wood Street, he was alerted by a signal from the back-up unit that he was being followed. Delaying his walk on a pretense, he observed appellant approaching him from the rear, and further observed appellant as the two passed on the street.

It seems obvious that the above described scene along Wood Street had its intended result and that the officer convincingly portrayed a carefree tourist on a happy vacation in Philadelphia. Appellant's eyes apparently translated the vision into dollar signs, for surely such a visitor had cash in his pockets. After appellant passed the officer-visitor, Corporal Lutz continued westwardly on Wood Street. Shortly thereafter, appellant, aided by a confederate, attacked.

The appellant led the attack, pushing the victim against a wall, while his confederate struck the victim three times in the face. The victim fell to the ground. While the confederate began to go through the victim's pockets, appellant attempted to kick the victim in the face, not once, but several times. The intent of this kicking was foiled only because Corporal Lutz took the force of the kicks on his arm, which he used to protect his head. At this point, the back-up unit arrived on the scene, and appellant fled. Appellant was not swift enough, however, to outrun the police canine dog who quickly made the initial stop.

Fortunately, this intended victim suffered only minor injuries. But appellant's actions establish that his intent

was vicious, and that his acts were clearly in reckless, knowing indifference to the value of his victim's life.

This factual recitation is, of course, made from the record, as we are required, in the light most favorable to the verdict winner. The appellant's testimony understandingly conflicts, however, his identification and participation is firmly established by this record.

It is indeed true, as appellant argues, that in *Alexander, supra,* the supreme court, in reversing our earlier decision at 237 Pa.Super. 111, 346 A.2d 319 (1975), held that where the victim of a single punch to the nose did not actually sustain the requisite bodily injury, the injury there being a fractured nose, a conviction for aggravated assault could not be sustained because there was insufficient evidence, direct or circumstantial, from which an intent to inflict serious bodily injury could be inferred. There, the only direct evidence of intent was the appellant's testimony to the effect that he did not intend to seriously injure the victim when he "sucker punched" the victim in an unexpected assault on a street corner. Additionally, the supreme court in *Alexander* observed that there was no evidence that appellant was disproportionately larger or stronger than the victim and that appellant was not restrained from escalating his attack upon the victim. The supreme court explained, "We hasten to add that a simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault." 477 Pa. at 194, 383 A.2d at 889.

Recently, in *Commonwealth v. Kibe,* 258 Pa.Super. 353, 392 A.2d 831 (1978), we have made such a distinction. There, a lone woman, late at night, was approached from the rear by the appellant in a deserted parking lot. The evidence suggested an intended sexual attack but culminated, after the victim indicated resistance, in a punch to the head, fracturing the woman's nose. The majority of this court held that such evidence was sufficient to support appellant's conviction for aggravated assault.

■ The key to the interpretation of *Alexander, supra,* and our subsequent interpretation in *Kibe, supra,* is, of course, intent. Criminal intent may be proved by direct or circumstantial evidence. *Commonwealth v. Caye,* 465 Pa. 98, 348 A.2d 136 (1975).

■ This victim, a police officer, accepted the risk of some attack as a part of his official assignment. Indeed, it could be argued that he invited an attack. That situation, however, does not negate the appellant's intent. As intent is a subjective frame of mind, it is of necessity, difficult of direct proof. It would be most surprising to have a person in appellant's situation say, "I intended to render this old man helpless, injury was a sure way of doing this, and that was what I intended so he could easily be robbed." We must look to all the evidence to establish intent, including, but not limited to, appellant's conduct as it appeared to his eyes. But accepting for the moment, without approval, Judge Spaeth's suggested test in his dissent in *Kibe, supra,* from appellant's eyes this was an attack by two men on an elderly lone male that appeared to present a likely prospect for a profitable strong-arm robbery. Appellant led the attack, forcing the victim against a wall while his confederate struck him. After the victim fell to the ground, and while the confederate searched his pockets, the appellant aimed kicks at the victim's head. Appellant was stopped only by the fortuitous appearance of the back-up officers, whose presence, of course, was unknown to him. We believe this picture frames sufficient evidence to support a finding of intent to inflict serious bodily injury, and that under the test required in *Alexander, supra,* the conviction is proper.[5]

The judgments of sentence are affirmed.

CERCONE, President Judge, files a concurring opinion in which HESTER, J., joins.

5. In view of our holding, we need not address the Commonwealth's contention that the conviction may be sustained as an assault on a police officer under 18 Pa.C.S. § 2702(a)(2) and (3).

SPAETH, J., files a dissenting opinion.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

CERCONE, President Judge, concurring:

The dissenting opinion not only fails to add anything to the body of meaningful law but obfuscates any attempt to do so. Not every kick of the head to an elderly person can be considered an aggravated assault; but, neither can the elemental facts of old age be ignored. (We take the facts of this case presumed in the assailant's view of the situation.) It is of general knowledge that an elderly person can, without being touched by anyone, fall and break a hip, an arm or sustain a concussion. Any normal person, with the least iota of sensitivity, would be horrified at the thought of striking an elderly person, not only because of the natural respect a normally responsible person feels for the elderly, but also out of the knowledge of the explicit danger that would come from such action. Here, all the assailant knew was that he was attacking an elderly person. Taking the view of the dissent in its very best interpretation, the surrounding circumstances of a kick in the head and being pushed up against a wall is sufficient circumstantial evidence to indicate the intent to do serious bodily harm to the victim, whether the kick was administered by a naked foot, a tennis shoe, or a hob-nailed boot. I think it is time we separated legal niceties from the facts of life and protect the elderly on the latter ground rather than assuage the conduct of the assailant on the former. (This was an attack for the purposes of this case upon an early person.)

HESTER, J., joins in this opinion.

SPAETH, Judge, dissenting:

I don't agree that "hard cases make bad law." That's like saying "Hard thinking is bad for the brain." Hard cases made good law, or rather, they do if faced up to for they require the court to rethink the law, and afford it the chance of stating the law more clearly. Here, the majority has not

faced up to a hard case; instead, by failing to abide by settled principles of appellate review, it has made a hard case look easy. A pity. The result is that as regards aggravated assault, the law remains, to put it gently obscure.

–1–

The majority states that facts as follows:

The appellant led the attack, pushing the victim against a wall, while his confederate struck the victim three times in the face. The victim fell to the ground. While the confederate began to go through the victim's pockets, appellant attempted to kick the victim in the face, not once, but several times. The intent of this kicking was foiled only because the Corporal Lutz took the force of the kicks on his arm, which he used to protect his head. At this point, the back-up unit arrived on the scene, and appellant fled. Appellant was not swift enough, however, to outrun the police canine dogs who quickly made the initial stop.

At 541.

Later in its opinion the majority adds to this statement that "[a]fter the victim fell to the ground, and while the confederate searched his pockets, the appellant aimed kicks at the victim's head. Appellant was stopped only by the fortuitous appearance of the back-up officers, whose presence, of course, was unknown to him." At 542.

At trial, the Commonwealth presented only one witness, Corporal Michael Lutz, who was the victim of the attack. Corporal Lutz's testimony fills sixteen pages of transcript. The only testimony he gave concerning the attack was as follows:

Their heads [the heads of appellant and his confederate] were looking all around in each direction and they came down to me. This defendant here pushed me up against the wall at Tenth and Wood Street. The other defendant, Thomas, hit me three times.

Q. Where were you struck?

A. In the facial area.

Q. What happened then?

A. I bent down to the ground and the defendant, Thomas, started to go into my pockets. When Thomas was going into my pockets this defendant here, when I was on the ground, kicked me. He would have kicked me in the head but I put my hand up and he kicked me in the arm. While I was down on the ground the police, my back up team, came on the scene and I heard this defendant, who was standing up, he said: on no, I knew it. He started to run and Officer Meller, he was the canine man on our team, he told the defendant to stop, identified himself verbally as police. The defendant failed to stop and he let his canine dogs loose on the defendant and the canine dog apprehended the defendant.

N.T. 8–9.

It is thus apparent that appellant made one attempt to "kick [ ] [the corporal] in the head"; the majority's statements that "appellant aimed kicks at [the corporal's] head," and that "appellant attempted to kick [the corporal] . . , not once, but several times," are contrary to the record. It is also apparent that the majority draws inferences, and makes suggestions, that are either contrary to the record, or at least not supported by it. Specifically: The majority says that "appellant attempted to kick [the corporal] in the face." Perhaps he did, but the corporal said, "He would have kicked me in the head." The corporal's choice of words may indicate that appellant did not try to kick him in the face, for when asked where Thomas hit him, the corporal replied, "In the facial area." The majority says that the corporal "took the force of the kicks on his arm." However, in addition to noting that there was only one kick, it should also be noted that we do not know how much "force" was involved. Apparently not much, for when the corporal was asked "[h]ow seriously [was he] injured," he replied:

> I didn't receive any hospitalization but as a result of his pushing me up against the wall it did hurt. I did feel pain.

Q. Were you treated by a physician?

A. No, ma'am.

Q. What was it that hurt?

A. My head.

N.T. 9–10.

At no point did the corporal say that the kick to his arm inflicted any pain or any injury, even a bruise. Finally, the majority says that "[a]ppellant was stopped only by the fortuitous appearance of the back-up officers." This suggests—it really says—that appellant was kicking the corporal for the sake of kicking him—a suggestion underlined by the majority's characterization of appellant's intent as "vicious." At 541. If the corporal had testified to repeated kicks after he had been robbed, the suggestion would be warranted. However, the corporal said that the single kick appellant gave him was inflicted while he was being robbed: "When Thomas was going into my pockets this defendant here, when I was on the ground, kicked me." After Thomas had robbed the corporal (elsewhere in his testimony the corporal said that Thomas took $10 from his jacket pocket, N.T. 9), appellant did nothing—at least, the corporal did not say he did anything—except to say, "Oh no, I knew it," when he saw the back-up unit arrive, and try to run away.

I quite agree with the majority that we must read the record in the light most favorable to the Commonwealth. That principle, however, hardly justifies the majority's rather imaginative reconstruction of the criminal incident here. When we read the record, we must abide by certain settled principles. First, we must determine what the facts were— not what they *really* were, for we can never know that, but what the witnesses *said* they were. In doing this, we must discount, to the point of ignoring, the testimony of any witness who gave factual testimony contrary to factual testimony more favorable to the Commonwealth. Here, for example, we must give full value to Corporal Lutz's testimony, and ignore appellant's. Second, the facts having been thus determined, we must give the Commonwealth the benefit of every favorable inference that may be deduced *from*

*those facts* —not from some *other* set of facts, which might indeed really have existed, but which the factual testimony in the record does not show existed. *See : Commonwealth v. Jasper*, 472 Pa. 226, 372 A.2d 395 (1976); *Commonwealth v. Africa*, 466 Pa. 603, 353 A.2d 855 (1976) (plurality opinion); *see also Commonwealth v. Robinson*, 474 Pa. 313, 315, 378 A.2d 809 (1977) (ROBERTS, J., dissenting). Here the major-ity has failed to abide by these principles. First, it has not stated the facts as the corporal stated them; and second, it has deduced inferences by assuming (or by stating as proved) facts that were not proved. When a court engages in such a process, it is deciding a case not on the basis of the record but on the basis of suspicion and speculation, which may never support a conviction. *Commonwealth v. Thomas*, 465 Pa. 442, 446–47, 350 A.2d 847, 849 (1976); *Common-wealth v. Stanley*, 453 Pa. 467, 469, 309 A.2d 408, 410 (1973); *Commonwealth v. Bailey*, 448 Pa. 224, 227, 292 A.2d 345, 346 (1972).

When the record is regarded as we should regard it, the facts may be stated as follows: Appellant and his confeder-ate, Thomas, saw someone they thought was an elderly tourist, but who was in fact a police officer in disguise, and decided to rob him. Appellant pushed the officer up against a wall, and Thomas hit the officer three times in the face. The officer fell to the ground, and Thomas started going into his pockets. While Thomas was doing this, appellant aimed a kick at the officer's head, but the officer put his hand up and the kick struck his arm. Thomas got $10 from the officer's jacket pocket. At this point the officer's back-up unit arrived. Appellant, who was standing up, said, "Oh no, I knew it," and started to run. One of the back-up officers told appellant to stop, but he didn't, and so the back-up officer let his dog loose, and the dog caught appel-lant. The officer disguised as a tourist "did feel pain" in his head, when as a result of being pushed against the wall, the back of his head hit the wall. The officer did not describe the intensity of the pain, nor did he say that he suffered any injury to his head, as for example a cut or lump. The blows

to the officer's face, and the kick to his arm, so far as appears inflicted neither injury nor pain.

–2–

In *Commonwealth v. Kibe*, 258 Pa.Super. 353, 392 A.2d 831 (1978), this court divided on the issue of how to state the test by which to distinguish aggravated from simple assault, in a case where no serious bodily injury was inflicted, or, in other words, in a case where the issue is whether the defendant committed a simple assault *with the intent* to inflict serious bodily injury, albeit without that *effect.* The majority (by PRICE, J., WATKINS and HOFFMAN, JJ., not participating) found an aggravated assault by appraising the defendant's conduct as perceived by his victim. In dissent, I argued that we had to determine what the defendant intended by asking what *he* thought he was doing, not by what his victim thought. In support of this argument I cited, *inter alia*, the Supreme Court's statement in *Commonwealth v. Alexander*, 477 Pa. 190, 194, 383 A.2d 887, 889 (1977), that

> [w]here the injury actually inflicted did not constitute serious bodily injury, the charge of aggravated assault can be supported *only* if the evidence supports a finding that the blow delivered *was accompanied by the intent to inflict serious bodily injury.* (Emphasis added.)

Here, the majority does not mention, much less apply, the test it used in *Kibe*. Instead, it purports to apply the test I used in *Kibe*, but says it does so "without approval." At 542. I submit, that is not the way to decide a case. If the majority does not "approve" of a given test, what difference does it make whether the evidence was sufficient to satisfy that test? The proper procedure, I should suppose, would be for the majority to state a test it did approve of, and then decide whether the evidence was sufficient to meet that test. In any event, I remain of the opinion that the test I stated in *Kibe* is a correct statement of the law, despite its failure to secure the majority's approval. The question, therefore, is this: Was the evidence—as just stated above; not as stated by the majority—sufficient to warrant the inference

that appellant intended to inflict serious bodily injury to the officer?

The Crimes Code, 18 Pa.C.S.A. § 2301, defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." A single kick to the head may inflict such an injury. For example, it may result in a fractured skull, or the loss of an eye. Therefore, when two men rob an elderly man—or someone they think is an elderly man—by pushing his head against a wall, hitting him in the face, knocking him down, and aiming a kick at his head, it is easy to imagine that the robbery involved an aggravated assault. Not only is it easy; it is tempting; for the circumstances of the robbery excite our sense of outrage. It is this combination of possibility and outrage that makes this case such a hard one.

If, however, one can manage to look at the case with less passion and more reason, one must conclude that the evidence was not sufficient to support an inference of intent to inflict serious bodily injury. There are several factors that lead to this conclusion.

First, in fact the officer suffered substantially no injury at all: he suffered an undescribed but evidently only momentary "pain" when his head hit the wall, but nothing else; no cut, lump, or bruise, to the head, face, or arm.

Second, we simply don't know enough about any of the blows inflicted. The majority seems to concede that appellant's action of pushing the officer against the wall, with the result that the officer's head hit the wall, and appellant's confederate's actions of hitting the officer three times "in the facial area," were not accompanied by any such degree of force as to warrant an inference of intent to inflict serious harm. Therefore, the majority focuses on the kick ("kicks," it says) that appellant aimed at the officer's head. However, what sort of "kick" was it? A push to prevent the officer from getting up, so that appellant's confederate could finish going through the officer's pockets? A swing-

ing kick with the toe of the shoe? (In this regard, what kind of shoes was appellant wearing? Work boots? Sneakers?) Most important, how strong was the kick? To put the point of these questions differently, can we infer intent to inflict serious bodily injury from a single kick when so far as we know, that kick was so weak that when the officer blocked it with his arm, he felt no pain, and his arm was not even bruised?

Third, the time at which the kick was administered must be considered. The majority puts great emphasis on this; the difficulty is, in doing so the majority misstates the record. If the evidence were that appellant was kicking at the officer's head, and only stopped because the back-up unit arrived—which is what the majority says the evidence was—then perhaps one could infer the intent to do serious bodily injury, despite the fact that substantially no injury was inflicted, and despite the ambiguities and gaps in the evidence. However, the record is that the only kick appellant administered was at the beginning of the robbery, while appellant's confederate was going through the officer's pockets. When the back-up unit approached, the officer said, appellant "was standing up;" seeing the unit, appellant "started to run."

Accordingly, what the case comes down to is that the conviction of aggravated assault cannot be upheld unless one is willing to say that evidence of *any* single kick aimed at the head of an elderly person will be sufficient to warrant an inference of intent to inflict serious bodily injury. I submit that such a holding would be too broad, and should be precluded as a matter of principle. It would treat a given piece of circumstantial evidence as though it were not, and could not be, ambiguous. Evidence of *any shot* from a pistol, aimed at the head, will warrant an inference of intent to kill. *See generally People v. Neal*, 26 Ill.App.3d 22, 324 N.E.2d 476 (1975); Annot., 54 A.L.R.3d 612 (1974). An equally unambiguous inference is not possible from evidence of any kick aimed at the head.

What the majority has done—carried away, it would seem, by its sense of outrage—is to lose a sense of the distinction,

insisted upon by the Legislature, between aggravated and simple assault. Accept the majority's view, and almost any simple assault may be elevated to an aggravated assault. Aggravated assault, however, is one of the gravest offenses: a jealous lover throws lye on the victim's face ("serious permanent disfigurement"); a bully in a barroom brawl breaks off the neck of a beer bottle and puts out the victim's eye ("loss . . . of any . . . organ"). Not every kick aimed at the head, even of an elderly person, will be of comparable gravity. In this regard, I note that the President Judge in his concurring opinion agrees that "[n]ot every kick of the head to an elderly person can be considered an aggravated assault . . . ." I take it, therefore, that his rather vigorous disagreement with the rest of my opinion is not on matters of law but rather on what the record does, and does not, show. While I always regret being in disagreement with the President Judge, I have stated the record, and must let it speak for itself.

The Supreme Court has emphasized the gravity of aggravated assault in *Commonwealth v. Alexander, supra.* There, the defendant struck the victim in the face with his closed fist. The blow was a "sucker punch"; the victim neither expected it nor saw it coming. As a result of the blow, the victim was knocked to the ground, both his eyes were blackened, his nose was broken, and cuts in his face had to be stitched; the injuries required treatment in the emergency ward of a hospital. 237 Pa.Super. at 111–12, 346 A.2d at 319. Evidence of such a blow, given in such circumstances, was not, said the Supreme Court, sufficient to support an inference of intent to inflict serious bodily injury. 477 Pa. at 194, 383 A.2d at 889. It follows that neither can evidence of a single kick, administered with too little force to do any injury at all, be sufficient to support an inference of intent to inflict serious bodily injury. The majority attempts to distinguish *Alexander,* at 541, by asserting that here the circumstances were more serious, or "vicious," than in *Alexander.* This assertion, however, depends on the majority's mistaken statement of the record; in fact, the circumstances were less serious than in *Alexander.*

118

The judgment of sentence for aggravated assault should be vacated and the case remanded for imposition of sentence for simple assault. Otherwise, the judgments of sentence should be affirmed.