441 A.2d 1263

**COMMONWEALTH of Pennsylvania**

v.

**Michael L. DOHNER, Appellant.**

Superior Court of Pennsylvania.

Submitted March 10, 1980.

Filed Feb. 19, 1982.

344

John F. Pyfer, Jr., Lancaster, for appellant.

Ronald L. Buckwalter, District Attorney, Lancaster, for Commonwealth, appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

BROSKY, Judge:

Appellant, Dohner, was convicted of simple assault,[1] aggravated assault,[2] recklessly endangering the life of another,[3] and criminal mischief.[4] Dohner was tried before a jury along with his codefendant, Stanley Roger Gainer. Dohner was sentenced to not less than six months nor more than twenty months for aggravated assault. For the convictions of simple assault and recklessly endangering the life of another, Dohner was placed on probation for two years. For the conviction of criminal mischief, Dohner was placed on probation for one year. The two probationary sentences were to run concurrently with each other and consecutively with the aggravated assault sentence. Motions for a new trial and in arrest of judgment were made and subsequently denied. This appeal followed. We affirm in part and reverse and remand portions of the trial court's decision.

On March 5, 1978, Marlin McConnell, the owner of the Railroad House, a restaurant in Marietta, Pennsylvania, saw

1. 18 Pa.C.S.A. § 2701(a)(1).

2. 18 Pa.C.S.A. § 2702.

3. 18 Pa.C.S.A. § 2705.

4. 18 Pa.C.S.A. § 3304(a)(2).

Dohner and Gainer at the front of his building knocking down a porch railing. McConnell approached Dohner and Gainer in an attempt to stop their actions. McConnell testified that at sometime during the altercation which followed he was struck on his cheek. He said that he saw Gainer pick up a ballaster, presumably one torn from the fence around the porch, shortly before he was initially struck. Gainer, could not have delivered the first blow as McConnell testified that he was holding Gainer at the time he was struck. McConnell stated also that Dohner and another man, Jeffrey Garner, were behind him, out of his sight, when he was struck. McConnell never stated that Garner or Dohner hit him.

The trial court's opinion points out that as a result of all the physical abuse inflicted upon McConnell, that he:

> sustained a fracture of the right zygomatic arch and floor of the right orbit [out of his eye socket]. He suffered immediate effects of numbness of his right cheek and double vision in his right eye. His eye dropped out of place. Surgery was performed in which the bones were replaced and wired in place in one area where the fragments would not hold position. General anesthesia was required. Dr. Levin described the injuries (letter exhibit) as "fairly severe." He opined that it would take a "significant blow" to cause such a fracture and dislocation.

(Trial court's opinion at page two.)

The only evidence which tied Dohner to the crime of aggravated assault was given by McConnell who stated that he saw Dohner walk behind him shortly before he was struck, that shortly after he lost sight of Dohner he was struck on his cheek. He was uncertain whether he was struck by a fist or some object. He also states he did not see Garner until the end of the fracus. The record does not clearly indicate where Garner was during the incident though Garner states that he was some distance from McConnell when the initial blow was struck.

Garner testified at trial that he had no recollection of Dohner's actions during the incident. Gainer stated at trial

that he hit McConnell once with his hand and never saw Dohner or Garner strike McConnell. Dohner stated that he never hit McConnell. He testified:

Q. At any time on this night did you hit Mr. McConnell?
A. No.
Q. Did you hit him with your fists?
A. No.
Q. Did you hit him with the posts?
A. No.
Q. Did you hit him with anything?
A. No, sir.

The record discloses that, Dohner and Gainer and Garner went to the office of Dohner's attorney, John M. Smith, Esquire, some time after the trial had concluded. Mr. Smith testified at the evidentiary hearing regarding Dohner's post-trial motions that Gainer and Garner substantially altered their testimony regarding Dohner's involvement in the incident during their conversations with him. Smith stated that the altered testimony placed Dohner completely separate from the incident at the time McConnell was struck. However, the record indicates that Gainer and Garner did not substantially alter their trial testimony at the evidentiary hearing. In fact, Gainer went so far as to categorically deny the statements attributed to him by Smith when he testified at the evidentiary hearing.

In *Commonwealth v. Mosteller*, 446 Pa. 83, 88, 284 A.2d 786, 788 (1971), our Supreme Court stated the standard by which a court shall determine whether a new trial should be granted because of the existence of after-discovered evidence. The court said:

This Court has often reiterated that: "...

'A new trial in a criminal case will be awarded on the ground of after-discovered evidence where the evidence in question (1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used

solely for impeaching credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted.'" *Commonwealth v. Coleman*, 438 Pa. 373, 376–377, 264 A.2d 649, 651 (1970).

Dohner essentially claims that Gainer committed all the offenses and that he was in no way responsible. Nevertheless, Gainer, whom Dohner claimed originally planned to recant his testimony, did not recant his testimony at the evidentiary hearing. Thus, the trial court had to weigh the testimony of Attorney Smith who testified as to what manner Gainer would recant his testimony against that given by Gainer at the evidentiary hearing and determine which version of the evidence was credible.

We recognize that recanted testimony is extremely unreliable. As our Supreme Court said in *Commonwealth v. Nelson*, 484 Pa. 11, 13, 398 A.2d 636, 637 (1979):

Recantation testimony is considered extremely unreliable. The trial court is to deny a new trial unless satisfied that the recantation is true and an appellate court is not to disturb the decision unless there is clear abuse of discretion. *Commonwealth v. Coleman*, 438 Pa. 373, 264 A.2d 649 (1970). It is up to the trial court to judge the credibility of the recantation. *Commonwealth v. Sanabria*, 478 Pa. 22, 385 A.2d 1292 (1978). We find that it was proper for the court to discredit Hagans' recantation and that there was no abuse of discretion. The trial court's decision is also supported by the other evidence linking appellant to the scene of the crime. See *Commonwealth v. Wilcox*, 481 Pa. 284, 392 A.2d 1294 (1978).

There was no actual recantation by Gainer in the instant case rather a statement by Attorney Smith that Gainer described to him evidence which if placed on the record would amount to a recantation. Without any discussion of potential hearsay problems related to Smith's testimony, the evidence regarding the substance of Gainer's statements is very unreliable.

When we review Garner's testimony. He said:

348

Q. Your testimony at trial was—and correct me if I am wrong—that you really didn't know where Michael Dohner was during the course of this altercation.

A. During trial?

Q. Yes. When you testified at the trial, didn't you basically state you didn't know where Dohner was?

A. Yes, that's right. At the time I was prying them apart—yes.

Q. Okay. I believe you also stated you didn't see anybody hit the victim with the post or ballaster, is that right?

A. No.

Q. Are you saying you didn't see that?

A. No, I didn't see anybody hitting him with anything. I saw him and Roger exchanging fists.

Q. You saw them hitting each other with fists?

A. They were battling it out—that's what I seen.

Q. Now according to Mr. Smith, in December when you spoke to him, you told him you didn't know where Dohner was when the fight was going on. Is that what you told him?

A. At what time that the fight was going on? When I was splitting the two, or between the time it started?

Q. The time it started and the time you broke it up.

A. At that time we were parked up the street, and Mr. Dohner, instead of getting in the car, he walked around the back as we drove off. He saw everything going on and so did I. The fight was heading towards the corner. So I figured we would go around the corner and I could grab Roger and put him in the car quick.

When we got around, Dohner was walking over. As he was walking over, that's when I got out of the car. So in other words he wasn't there right in that vicinity when I was trying to get the two apart. It wasn't a four man argument—it was only three of us. At that time Dohner must have walked over around the back of Mr. Sears and we all jumped in the car then.

Q. That's consistent with what you said at trial.

A. Yes.

Q. The only thing you're saying now that you didn't say at trial was that you touched McConnell when you broke them apart.

A. Well at trial I told him I was shoving the two apart—touching and shoving. What's the difference really.

Q. You're saying the same thing now as what you said at trial.

A. Yeah, more or less—yeah.

This testimony was essentially unchanged from that Garner gave at trial.

The one and only apparent change in his testimony appears in Garner's statement:

Q. And just so I'm clear, as far as Mr. Smith's recollection of Gainer's statement to him on December 26th, 1978, Mr. Smith is talking about the same witness you are, is that correct?

A. Yes.

Certainly, if this evidence is used to prove Gainer's statements to Attorney Smith it serves only to further cloud the testimony. This in turn strengthens the trial court decision that Gainer's statements were unreliable. Therefore, if any after-discovered evidence existed, it was very unreliable and would not result in a changed verdict if a new trial was granted. The trial court did not abuse its discretion in denying the motion for a new trial.

Next, Dohner claims the trial court improperly refused to grant his demurrer to the Commonwealth's case, with regard to his convictions for aggravated assault and recklessly endangering the life of another.[5]

In *Commonwealth v. Petrie*, 277 Pa.Super. 239, 243, 419 A.2d 750, 752 (1980) we said:

---

**5.** The trial court's opinion does not specifically discuss this issue even though it was properly raised in appellant's motion for a new trial and in arrest of judgment. *Commonwealth v. Dussinger*, 478 Pa. 182, 386 A.2d 500 (1978).

To avoid a demurrer in a criminal prosecution, the Commonwealth must come forward with evidence which establishes beyond a reasonable doubt each element of the crime charged. *Commonwealth v. Mason*, 483 Pa. 409, 397 A.2d 408 (1979). Therefore, the test to be applied in ruling on a demurrer to evidence by a defendant is whether the Commonwealth's evidence and all reasonable inferences arising therefrom are sufficient to support a verdict of guilty beyond a reasonable doubt of the crime under consideration. *Commonwealth v. Smith*, 262 Pa.Super. 258, 396 A.2d 744 (1978).

Thus, the standard by which we review the trial court's decision is very similar to that we apply in cases where the sufficiency of the evidence is challenged. There our review tests:

Whether, viewing all the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find every element of the crime charged.

*Commonwealth v. Martin*, 481 Pa. 515, 518, 393 A.2d 23, 25 (1978).

The elements of the offense "aggravated assault" include: (a) Offense defined.—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

(2) . . .

(3) . . .

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon.

"Serious bodily injury" is defined as: "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C. S.A. § 2301.

In *Commonwealth v. Alexander*, 477 Pa. 190, 194, 383 A.2d 887, 889 (1978) our Supreme Court stated:

> While there can be no dispute about the physiological significance of the head, where the victim did not actually sustain the requisite serious bodily injury, we cannot say that the mere fact that a punch was delivered to that portion of the body [the head] is sufficient, *without more*, to support a finding that appellant intended to inflict serious bodily injury. Where the injury actually inflicted did not constitute serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding that the blow delivered was accompanied by the intent to inflict serious bodily injury. Criminal intent may be proved by direct or circumstantial evidence. *Commonwealth v. Caye*, 465 Pa. 98, 348 A.2d 136 (1975); *Commonwealth v. Taylor*, 461 Pa. 557, 337 A.2d 545 (1975); *Commonwealth v. Fostar*, 455 Pa. 216, 317 A.2d 188 (1974).

The injury sustained by the victim in *Commonwealth v. Alexander*, supra., consisted of a broken nose, two black-eyes and lacerations on the head. The victim was treated at an emergency ward. Alexander was found to have caused the injuries by striking the victim with a closed fist. The Supreme Court held these facts were insufficient upon which to base a conviction of aggravated assault. In adopting this view, the Supreme Court accepted the dissenting opinion in *Commonwealth v. Alexander*, 237 Pa.Super. 111, 346 A.2d 319 (1975) by Judge Spaeth.

This court has followed the view expressed by Judge Spaeth in *Commonwealth v. Dessus*, 262 Pa.Super. 443, 396 A.2d 1254 (1978), where we found facts indicating the appellant had:

> went far beyond the single blow delivered in *Alexander*. Witnesses testified that appellant approached Mr. Moskal from behind and struck him at least five or six times, knocking him off a chair and rendering him unconscious.

We held that these facts presented the court with sufficient evidence to convict Dessus of aggravated assault.

We have analyzed the question of the sufficiency of the evidency to prove aggravated assault in numerous other cases. A review of several of them is helpful. In *Commonwealth v. Kibe*, 258 Pa.Super. 353, 358, 392 A.2d 831, 833 (1978) we said:

> Where a lone woman is approached at a late hour from the rear without warning by a male, ordered into her car, put in fear of an impending rape, and upon her refusal, struck with such force in the face as to fracture her nose, we hold that evidence sufficient to support a conviction for aggravated assault.

And in *Commonwealth v. Bullock*, 259 Pa.Super. 467, 473, 393 A.2d 921, 924 (1978) we stated:

> As a result of the assault Miss Kirby received several months of medical attention and was contemplating plastic surgery at the time of trial. Coupled with appellant's attempts to strangle her and his threat to kill her, this assault was clearly aggravated within the meaning of the Crimes Code, 18 Pa.C.S. §§ 2702 and 2301. Compare *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978).

Then, in *Commonwealth v. Moore*, 261 Pa.Super. 92, 100, 395 A.2d 1328, 1332 (1978) we opined:

> Appellant next contends that the evidence was insufficient to sustain a guilty verdict for aggravated assault because there was no evidence that he caused or attempted to cause serious bodily injury. The Crimes Code defines "serious bodily injury" as: "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. In *Commonwealth v. Stancil*, 233 Pa.Super. 15, 334 A.2d 675 (1975), we held that evidence that the victim was beaten, stomped and left semi-conscious but not permanently injured was sufficient to prove an attempt to cause serious bodily injury.

Also, in *Commonwealth v. Gregory*, 267 Pa.Super. 103, 108, 406 A.2d 539, 542 (1979) we said that where a policeman was masquerading as an elderly person was attacked:

> Appellant led the attack, forcing the victim against a wall while his confederate struck him. After the victim fell to the ground, and while the confederate searched his pockets, the appellant aimed kicks at the victim's head. Appellant was stopped only by the fortuitous appearance of the back-up officers, whose presence, of course, was unknown to him. We believe this picture frames sufficient evidence to support a finding of intent to inflict serious bodily injury, and that under the test required in *Alexander, supra*, the conviction is proper.

Then, in *Commonwealth v. Davis*, 267 Pa.Super. 370, 375, 406 A.2d 1087, 1089 (1979) we stated:

> In the instant case, the force of appellant's blow to Mrs. Amos' face caused her to black-out and to sustain multiple fractures of the jaw. She was hospitalized for four days and suffered six weeks with her jaw wired closed. Clearly, this was a serious bodily injury within the intendment of Section 2301 of the Crimes Code, involving as it did "protracted loss or impairment of the function of [a] bodily member or organ." Additionally, appellant's overall conduct, including his frenzied pursuit of Ms. Putt in order to beat her more seriously, supports the conclusion that appellant acted with extreme disregard of the value of human life as required by Section 2702(a)(1) of the Crimes Code. See *Commonwealth v. Bullock*, 259 Pa.Super. 467, 393 A.2d 921 (1978). Hence, the evidence was more than sufficient to support the jury's verdict of guilty for aggravated assault.

However, in *Commonwealth v. Bryant*, 282 Pa.Super. 600, 607, 423 A.2d 407, 411–412 (1980) we held on facts somewhat similar to those in *Commonwealth v. Davis*, supra:

> After reviewing the record, we are led to the conclusion that appellant's actions do not even evidence an attempt to inflict serious bodily injuries upon any of the victims. One isolated kick does not reflect an intent to cause

permanent disfigurement nor does it create a substantial risk of death. *Commonwealth v. Alexander,* 477 Pa. 190, 383 A.2d 887 (1978). Likewise, the act of throwing someone to the ground is insufficient evidence of an intent to commit serious bodily injury as defined above. As to the charge of aggravated assault against Jean Daley, the Commonwealth concedes the charge is baseless, and an examination of the record corroborates this.

Finally, in *Commonwealth v. Cavanaugh,* 278 Pa.Super. 542, 545, 420 A.2d 674, 675 (1980) we stated:

It may be granted that appellant did not cause "serious bodily injury" to Harris. See *Commonwealth v. Alexander,* 477 Pa. 190, 383 A.2d 887 (1977). The evidence that he repeatedly struck Harris with a tire iron, once on the head, that he was much larger than Harris, and that he told Harris that "next time" he would kill him, was nevertheless sufficient to support an inference that he attempted to cause serious bodily injury to Harris.

The facts in the instant case are weaker than those found in cases where we affirmed a conviction of aggravated assault. First, the only evidence that Dohner hit McConnell came from the testimony of McConnell.[6] Secondly, there was no clear evidence whether McConnell was struck with a fist or open hand or some object. Thirdly, the record

6. While we realize that the trial court relied upon evidence that the injury resulted in a fracture of the cheekbone which caused the victim's eye to drop out necessitating surgery, the record indicates that after the initial and only blow attributed to Dohner was struck that the victim did not lose consciousness. McConnell was asked:

Q. In fact, did you see anything coming at you before you were hit using your peripheral vision?

A. No, I just suddenly felt a blow and felt bones or teeth or something rattling in my mouth.

This evidence alone appears to us to be similar to that in *Commonwealth v. Alexander,* supra, where the single blow resulted in a broken nose, and was held insufficient. The evidence given by McConnell indicates that he was initially struck about his head by Dohner. However, the record appears to us to indicate that the seriousness of the initial blow was greatly exaggerated by a subsequent blow inflicted by Gainer. Thus, we do not consider the medical evidence was sufficient to justify the court's denial of the demurrer.

indicates no other witnesses saw Dohner hit McConnell. Fourthly, the record indicates McConnell was struck on the head several times by Gainer or Garner. Fifthly, while the injuries the victim sustained were serious, McConnell never lost consciousness, and the record does not indicate how lengthy a hospital stay he had to endure. Most importantly, the record does not supply evidence which indicates the appellant intentionally caused appellant's injuries. The seriousness of the injuries, which we do not hold were or were not sufficiently serious to result in a conviction of aggravated assault were they inflicted by one person, were caused by the actions of three persons. The record does not even indicate the appellant was the primary inflictor of the injuries. Furthermore, the record gives no indication that the appellant "intentionally, knowingly, or recklessly" caused the injuries "under circumstances manifesting extreme indifference to the value of human life."

Thus, when we compare the facts in the instant case to those in our decisions which interpret *Commonwealth v. Alexander*, supra, we are persuaded that the assault was not inflicted by a single blow. *Commonwealth v. Gregory*, supra; *Commonwealth v. Davis*, supra. Second, these facts do not involve a surprise attack on a *person* who has no reasonable defense. Here, the victim interjected himself into the situation. *Commonwealth v. Kibe*, supra. Third, the injury was not so severe in and of itself to evidence the intent required to prove aggravated assault. The record does not provide any certainty as to whether the injuries and to what extent the injuries were caused by Dohner, Gainer or Garner, *Commonwealth v. Davis*, supra; *Commonwealth v. Moore*, supra; *Commonwealth v. Bullock*, supra. Therefore, as we found in *Commonwealth v. Bryant*, supra, on facts indicating a single blow was struck and no severe disfigurement resulted, we must hold that the evidence was not sufficient to support a conviction for aggravated assault.

In light of these decisions, we do not believe the trial court acted properly in denying appellant's demurrer because the evidence was not sufficient for a jury to conclude that every

element of the crime had been proven beyond a reasonable doubt. Accordingly, we reverse the aggravated assault conviction.

■ The elements of the offense of recklessly endangering the life of another include:

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705. While we clearly hold that the injury inflicted by Dohner was not in fact one which placed McConnell "in danger of death or serious injury," it certainly was conduct which *may* nevertheless have placed him in such danger. *Commonwealth v. Cavanaugh,* supra. Accordingly, the trial court's decision denying appellant's demurrer to this charge was proper.

Dohner raises four other issues. They are:

1. The Trial Court erred in refusing to sustain Defendant's objection to the introduction into evidence of a wooden post with protruding nails where no evidence showed the victim's injuries were caused by a sharp object.

2. The Trial Court erred in refusing Defendant's offer to recall Pam Paris as a witness to testify as to a Res Gestae statement made to her by the Defendant about one-half hour after the incident.

3. Defendant received ineffective assistance of counsel since trial counsel failed to move for severance of the trials of Defendants Dohner and Gainer to the prejudice of his client.

4. Defendant received ineffective assistance of counsel since trial counsel failed to cross-examine Pam Paris, witness for Commonwealth, precluding Defendant the Opportunity for attack on credibility and for impeachment purposes, knowing Paris had information exculpating Defendant.

The first two of these issues concern Dohner's conviction for aggravated assault. We see no reason to discuss these issues in light of our decision to reverse the aggravated assault conviction.

Finally, Dohner asserts that his trial counsel was ineffective. These claims have not been properly presented to this court. Trial counsel filed a motion for new trial and arrest of judgment on the 24th of July, 1978. This motion was supplemented on the 8th of March, 1979. Trial counsel withdrew his appearance on the 5th of April, 1979. On the 10th of May, 1979, a hearing was held on Dohner's after-discovered evidence. And, on the 17th of July, 1979, a hearing on his other post-verdict motions was held. All motions were denied in the trial court's opinion dated the 24th of July, 1979. Dohner has raised his ineffectiveness claims for the first time on this appeal.

In *Commonwealth v. Stoner*, 284 Pa.Super. 364, 371, 425 A.2d 1145, 1148 (1981), we said:

> The effectiveness of trial counsel should be raised in the first proceedings in which the defendant is represented by counsel other than the one whose stewardship is challenged. *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975); *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975).

See also, *Commonwealth v. Jennings*, 285 Pa.Super. 295, 298 n.2, 427 A.2d 231, 232 n.2 (1981). It is clear that failure to raise an ineffectiveness claim at the first opportunity available when represented by new counsel results in a waiver. *Commonwealth v. Alberts*, 285 Pa.Super. 10, 11–12, 426 A.2d 678, 679 (1981). Accordingly, Dohner has waived his ineffectiveness claims he raises for the first time on appeal because his appellate counsel represented him at his post-verdict motions hearings and did not raise the ineffectiveness claims at that time. *Commonwealth v. Seachrist*, 478 Pa. 621, 387 A.2d 661 (1978); *Commonwealth v. Smallwood*, 465 Pa. 392, 350 A.2d 822 (1976).

The judgment of sentence of the trial court is affirmed in part and reversed in part. Dohner is ordered discharged and

he shall be deemed to have commenced from the date he was first incarcerated serving his probationary sentences imposed for convictions of simple assault, recklessly endangering the life of another, and criminal mischief. That date being more than two years before the date of this order, Dohner has therefore completed serving his sentence.

SPAETH, J., concurs in result.

VAN der VOORT, J., files dissenting opinion.

VAN der VOORT, Judge, dissenting:

The majority finds that the evidence was insufficient to support a conviction for aggravated assault. I respectfully disagree. Accepting the Commonwealth's evidence and all reasonable inferences arising therefrom, as the majority correctly holds we must, I believe the evidence was sufficient.

The victim, one McConnell, testified that while he was restraining co-defendant Gainer, he observed appellant Dohner, who had left the immediate area, approaching in back of him.

At that time the victim was dealt a blow to his right cheek area and heard bone shattering (N.T. pp. 51–52). McConnell further testified that after he observed Dohner moving behind him and to his right, he was immediately struck from behind or from the side on the right side of his face. (N.T. p. 77). The victim also stated that he saw Gainer approaching but that he was still across the road when the initial blow was struck. (N.T. p. 53). Dohner was the only one around to inflict the blow (N.T. p. 81). McConnell did not know what was used to strike him. (N.T. p. 80). Another Commonwealth witness, Hess, testified that appellant later told her that he had hit the victim at least three times (N.T. p. 12). Mr. McConnell testified that the initial blow was the only one inflicted to his right cheek. (N.T. p. 52). Accordingly, the jury could have found beyond a reasonable doubt that appellant was responsible for the injury to the right part of the victim's face.

The victim testified as to his injuries. His right cheek was completely caved in. The blow fractured the orbit of the right eye, that is the bony structure around the eye; part of which was still wired together on the day of trial. The fracture caused the eye to drop down so that the surgeon had to return it to its socket. (N.T. p. 53). The Commonwealth also had a letter from an examining physician, read into the record. The doctor confirmed the above injuries and stated that the damage was "fairly severe". He noted "that it takes a significant blow to cause a fracture and dislocation of this solid body of bone which, in effect, is a buttress to protect injury to both the eye and temporal skull". The victim underwent reconstructive surgery requiring general anesthesia. (N.T. pp. 87–89).

I believe the majority incorrectly places this case in the category covered by *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978). *Alexander* held that a mere blow to the head, resulting in a fractured nose without more was insufficient to demonstrate an intent to inflict serious bodily injury; the victim there was treated in an emergency room and released. The current appeal differs greatly in that both, a serious injury was inflicted and an intent to inflict such could be reasonably inferred.

I believe this case is controlled by such cases as *Commonwealth v. Davis*, 267 Pa.Superior Ct. 370, 406 A.2d 1087 (1979) and *Commonwealth v. Kibe*, 258 Pa.Superior Ct. 353, 392 A.2d 831 (1978).[1] In *Davis*, the defendant punched a woman in the face causing her to black out. She suffered multiple fractures of her lower jaw. She spent four days in the hospital and six weeks with her jaw wired shut. This court held that "a jury could find beyond a reasonable doubt that serious bodily injury occurred, and that appellant either intended or acted recklessly so as to manifest an extreme indifference to the value of human life." 267 Pa.Superior

---

1. While *Commonwealth v. Dessus*, 262 Pa.Superior Ct. 443, 396 A.2d 1254 (1978) appears to be on point, as one victim suffered a fractured cheek and was hospitalized for several days, it is not. There the court affirmed a finding of serious bodily injury as to a second more severely injured victim.

Ct. at 375, 406 A.2d 1087. *Alexander* was distinguished; there the prosecution conceded that no serious injury occurred; and the Commonwealth failed to show that the defendant's behavior demonstrated an extreme indifference to life.

In *Kibe*, a woman was approached at a late hour from the rear, by a man, without a warning. Fearing a rape the woman refused to cooperate with the man who then struck her in the nose, fracturing it. This court affirmed the conviction of aggravated assault, finding sufficient additional circumstances distinguishing it from *Alexander*.

*Alexander* also requires that factors other than the degree of injury be considered when determining the intent of the assailant. "Thus any evidence of [a defendant's] intent must be gleaned from the other circumstances . . . ." 477 Pa. at 194, 383 A.2d 887. Here, appellant was attacked from the rear or from the side but beyond his field of vision. Alexander confronted his victim head on. Appellant's involvement in the disturbance created a two against one situation in favor of appellant and his co-defendant.[2] One of the circumstances listed in *Alexander* was the disproportionate size between victim and aggressor. I "conclude that a jury could find beyond a reasonable doubt that serious bodily injury occurred, and that appellant either intended that result or acted recklessly so as to manifest an extreme indifference to the value of human life." *Davis*, 267 Pa.Superior Ct. at 374, 406 A.2d 1087.

I would affirm appellant's conviction for aggravated assault.[3]

**2.** The majority states that the victim interjected himself into the situation. Actually, the victim had every right to "interject" as appellant and his co-defendant were in the process of destroying property of the victim.

**3.** I also believe the majority improperly releases the appellant: if the conviction for aggravated assault is reversed, I believe the better procedure would be to direct the lower court to resentence appellant on the remaining convictions. See *Commonwealth v. Lezinsky*, 264 Pa.Superior Ct. 476, 400 A.2d 184 (1979).