348 A.2d 136

**COMMONWEALTH of Pennsylvania**

v.

**Edward J. CAYE, Appellant.**

Supreme Court of Pennsylvania.

Argued March 14, 1975.

Decided Nov. 26, 1975.

Thomas P. Ruane, Jr., R. W. Ziegler, Jr., Pittsburgh, for appellant.

Conrad B. Capuzzi, Dist. Atty., Uniontown, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

NIX, Justice.

Appellant Edward J. Caye was convicted by a jury of murder in the second degree for the shooting death of one Michael Daley. Post-trial motions were denied and a judgment of sentence of eight to twenty years of impris-

onment plus costs was imposed on August 4, 1974.[1] This direct appeal follows. Appellate Court Jurisdiction Act of 1970, July 31, 1970, P.L. 673, art. 11, § 202(1), 17 P. S. § 211.202(1) (Supp. 1974–75).

The principal issue raised in this appeal is the sufficiency of the evidence to sustain the verdict of murder in the second degree. More specifically, the issue presented is whether there was a sufficient basis on this record to find that the instant killing was with malice.

" 'To sustain a conviction of murder of either degree, the evidence must establish that the killing was committed with malice. *Commonwealth v. McFadden*, 448 Pa. 277, 292 A.2d 324 (1972).' *Commonwealth v. Coleman*, 455 Pa. 508, 510, 318 A.2d 716, 717 (1974). '[Malice] consists either of an express intent to kill or inflict great bodily harm, or of a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty" indicating an unjustified disregard for the probability of death or great bodily harm and an extreme indifference to the value of human life. *Commonwealth v. Carroll*, 412 Pa. 525, 194 A.2d 911 (1963).' *Commonwealth v. Chermansky*, 430 Pa. 170, 175, 242 A.2d 237, 240–41 (1968). See *Commonwealth v. Coleman*, supra. 'The existence of legal malice may be inferred and found from the attending circumstances of the act resulting in the death. *Commonwealth v. Bowden*, Pa., 309 A.2d 714 (1973).' *Commonwealth v. Coleman*, supra at 510, 318 A.2d at 717; *Commonwealth v. Chermansky*, supra; *Commonwealth v. Lawrence*, 428 Pa. 188, 193, 236 A.2d 768, 771 (1968)." *Common-*

1. After the verdict, appellant filed a petition requesting the setting of bail pending the determination of his post-trial motions. The petition was dismissed without a hearing and an appeal was taken to this Court. We reversed the order of the court below and remanded the record for a hearing pursuant to Pennsylvania Rule of Criminal Procedure 4004(a) (now Rule 4010, subd. A). *Commonwealth v. Caye*, 447 Pa. 213, 290 A.2d 244 (1972).

*wealth v. Taylor*, 461 Pa. 557, 559, 337 A.2d 545, 546 (1975).

See e. g. *Commonwealth v. Boyd*, 461 Pa. 17, 334 A.2d 610 (1975).

■■ The Commonwealth attempted to justify the verdict by relying on the inference of malice that normally may be drawn from the fact that a deadly weapon has been used upon a vital part of the body. While this inference is well recognized in our law it will not be permitted to support a finding of malice where the direct evidence presented in the Commonwealth's case proves the contrary. Accepting the testimony in a light most favorable to the Commonwealth as we must, *Commonwealth v. Pride*, 450 Pa. 557, 301 A.2d 582 (1973); *Commonwealth v. Young*, 446 Pa. 122, 285 A.2d 499 (1971); *Commonwealth v. Wrona*, 442 Pa. 201, 275 A.2d 78 (1971), we are constrained to conclude there was no justification for finding the presence of malice under the evidence.

The testimony disclosed that on February 5, 1971, Edward Caye, appellant, was spending the night at the home of Ms. Katherine Hartley located in a rural area approximately five miles distant from the town of Brownsville, Pennsylvania. In the home with Ms. Hartley and appellant were two other adult women and three children. At approximately 10:30 p.m. the occupants heard an automobile drive past the home with its lights turned off. This occurrence caused Ms. Hartley to become apprehensive because her home had been burglarized the previous night. She stated that she then turned off all the lights within the dwelling and left only the porch light on in an an effort to cause anyone passing to believe that no one was in the dwelling. She also testified that she had received a single barrel shotgun from her brother on the morning in question for her protection as a result of the burglary the previous night. About one half hour after seeing the first car a second

vehicle approached the driveway, stopped and sounded its horn. The occupants of the dwelling heard the car door slam and footsteps on the gravel outside. No one came to the door, nor was the occupant of the vehicle observed. At approximately 11:30 p.m., thirty minutes after first hearing the second car approach, someone was heard to walk upon the porch and knock loudly on the kitchen door. When no one responded the intruder unscrewed the porch light bulb and using his left shoulder forced open the kitchen door which had been padlocked from the outside.[2] Appellant who had grabbed the shotgun when he first heard the knock on the door fired a single shot as the intruder entered the doorway of the kitchen.

The victim, a Michael Daley, was an acquaintance of Ms. Hartley's and had seen her the evening before, at which time he asked her for a date, which she refused. Ms. Hartley also indicated that she believed one of Mr. Daley's friends might have been responsible for the burglary the previous night.

The home was a three room structure in a rural area, without a telephone. The nearest police department was approximately seven miles away. According to the measurements of the pathologist the victim was a male adult 5' 10" tall and weighing 190 pounds. Appellant was at the time of this occurrence 3' 8" tall and weighed 97 pounds. The Commonwealth stressed the testimony of Ms. Hartley that she had recognized the intruder as being Mr. Daley while he was outside on the porch and conveyed this information to her aunt, one of the women present inside the home that evening. The Commonwealth contended this comment was overheard

2. Ms. Hartley stated that after seeing the first vehicle she climbed out of her bedroom window and placed a padlock on her kitchen door from the outside. This was further to give evidence to anyone who might happen along that the home was empty. Ms. Hartley never fully explained why she believed these measures to give the appearance that the home was empty would ward off the possibility of another burglary.

by Mr. Caye who was standing in the vicinity at the time the remark was made.

Even accepting the fact that Mr. Caye may have overheard Ms. Hartley's comment as to the identity of the intruder, we are nevertheless hard pressed to see how this fact justifies the finding of malice. Under the testimony there appears to be only two plausible bases for rejecting Mr. Caye's claim of self defense. First, it is conceivable that the jury may have concluded that the action of the appellant resulted from an unreasonable apprehension of the threat of serious bodily harm. If this was the basis for the conviction it is then obvious that the appropriate verdict should have been voluntary manslaughter. *Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974); *Commonwealth v. Pride, supra; Commonwealth v. Miller,* 313 Pa. 567, 170 A. 128 (1934); *Commonwealth v. Principatti,* 260 Pa. 587, 104 A. 53 (1918); *Commonwealth v. Colandro,* 231 Pa. 343, 80 A. 571 (1911). Likewise, the jury may have found that although there was a reasonable basis for an apprehension of harm to himself and other occupants of the house the appellant nevertheless used unnecessary force to ward off the danger by failing to give some warning prior to the discharge of the weapon. Here again, such a conclusion would have only justified a finding of voluntary manslaughter. *Commonwealth v. Carbonetto,* 455 Pa. 93, 314 A.2d 304 (1974); *Commonwealth v. Edwards,* 448 Pa. 79, 292 A. 2d 361 (1972).

Thus, even though the evidence might have justified the rejection of the defense of self defense it clearly did not establish the existence of malice necessary to sustain a conviction of murder in the second degree. Nor, under these circumstances may an inference of malice be drawn from the use of the deadly weapon where the attending circumstances clearly negated its presence.

█ Judgment of sentence is reversed and a new trial ordered.[3]

---

**3.** The appellant may not again be tried for murder.