**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| NYHEIM REAVES, | |
| Appellant | No. 659 EDA 2015 |

Appeal from the Judgment of Sentence February 6, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0007567-2013

BEFORE:  OLSON, STABILE, and STRASSBURGER, JJ.[*]

MEMORANDUM BY STABILE, J.:                **FILED OCTOBER 17, 2016**

Appellant, Nyheim Reaves, appeals from the February 6, 2015 judgment of sentence entered in the Court of Common Pleas of Philadelphia County ("trial court") following his convictions of third-degree murder and possessing an instrument of crime ("PIC").[1] Appellant challenges the sufficiency of the evidence and the jury charge.  Upon review, we affirm.

The trial court summarized the relevant background as follows:

> On April 9, 2013, at approximately 12:25 A.M. Appellant, also known as "Weeze", stabbed Jeffrey Thompson ("Thompson") inside of the Carrie Turner Memorial Park located at 13th and Poplar Streets in the City and County of Philadelphia.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(c) and 907, respectively.

Prior to the incident, Aaron Warren "Warren" was in the park with two (2) other friends when Thompson and another friend arrived. The five (5) males were rapping and giving each other feedback on their performances. During this time, Appellant arrived alone. Both Appellant and Thompson were known to Warren. Appellant began to perform his own rap. An argument broke out between Thompson and Appellant because Thompson did not want to hear Appellant's rap. Thompson told Appellant to get out of his face. Warren stepped between Appellant and Thompson in order to break up the argument. Thompson then took off his jacket. [Thompson calmed down, said he was going to leave, and went to grab his jacket. *See* N.T. Jury Trial, 10/14/14, at 137.] Appellant kicked the jacket [, said "I'll kill you out here,"] and a fight broke out between Appellant and Thompson. Thompson and Appellant fell into the nearby shrubs and began tussling. The fight ended when Thompson walked out of the shrubs and said "I'm stabbed." Thompson, who was bleeding, was holding his stomach/chest area when he exited the shrubs, and he fell to the ground. Appellant ran away from the park.

Sergeant Stanley Sanford ("Sergeant Sanford") responded to a radio call which directed him to the park. He and his partner arrived within a minute of receiving the radio call and observed a black male lying on the ground bleeding. Two (2) other officers were already on location. No weapon was recovered. Thompson was placed into a police vehicle and was taken to Hahnemann University Hospital where he was pronounced dead at 1:07 A.M.

The Assistant Medical Examiner Dr. Edwin Lieberman testified that the cause of death was multiple stab wounds, the fatal wound being a two (2) inch deep wound to the left side of the chest which struck the lung and resulted in internal bleeding. There was also a 3 ½ inch deep wound to the femoral [artery/]vein of the left thigh, ["another wound that by itself would be fatal." N.T. Jury Trial, 10/14/14, at 90]. Several other, non-fatal wounds were also observed during the autopsy. The manner of death was found to be homicide.

Norman Jennings, ("Jennings") testified that he was sitting in a vehicle which was parked at Broad Street and Girard Avenue when he saw a black male cross in front of his vehicle. That male went to a nearby trashcan where he removed and discarded what appeared to be a bloody T-shirt, and asked bystanders for articles of clothing. This activity was also captured on a local surveillance camera. Sergeant Harold Toomer, ("Sergeant Toomer") was conducting a surveillance of the area when he was flagged down by Jennings. Following their discussion, Sergeant

Toomer went to the trash can where he discovered what appeared to be bloody clothing and a bloody sneaker.

Crime scene officers took photographs and collected evidence at the site of the stabbing and at the trashcans where the clothing and sneaker were located. Among the items retrieved at the trashcan were a hooded sweatshirt, a white T-shirt, an undershirt, a pair of jeans, and a left Puma Sneaker. Each of these items was bloodstained. No weapon was recovered at either location, however, the right Puma sneaker was recovered at the park. DNA swabs were taken from the clothing and sneakers. Forensic scientist Greg Alstine testified that DNA from Appellant was included as a DNA contributor on both sneakers and that the DNA from both Appellant and Thompson were found on all items retrieved at the trashcan, however the blood from the T-shirt and jeans was found to be Thompson's.

Trial Opinion 8/27/2015 at 2-4.

A jury trial was held from October 14 to October 16, 2014. The jury found Appellant guilty of murder in the third degree and PIC. Appellant was found not guilty of murder in the first degree. On February 6, 2015, the trial court sentenced the Appellant to an aggregate 270 months to 540 months of incarceration. This appeal followed.

On appeal, Appellant raises two issues:

I. Is [Appellant] entitled to an Arrest of Judgment on the charge of Murder in the Third Degree where [Appellant] acted without malice?

II. Is [Appellant] entitled to a new trial where the [trial c]ourt erred as it failed to charge Voluntary Manslaughter and all where the charge was well called for?

Appellant's Brief at 3.

Appellant first asserts that he is entitled to an arrest of judgment on the charge of murder in the third degree, as he did not act with malice. "The standard of review for the trial court as it passes upon a motion in

- 3 -

arrest of judgment is limited to a determination of the absence of presence of that quantum of evidence necessary to establish the elements of the crime." *Commonwealth v. Bigelow*, 611 A.2d 301, 303 (Pa. Super. 1992) (citation omitted). "All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove." *Commonwealth v. Meadows*, 369 A.2d 1266, 1268 (Pa. 1977). "When reviewing for sufficiency of the evidence, this Court may not substitute its judgment for that of the factfinder; if the record contains support for the verdict, it may not be disturbed." *Commonwealth v. Marks*, 704 A.2d 1095, 1098 (Pa. Super. 1997).

"Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." *Commonwealth v. Kling*, 731 A.2d 134, 147 (Pa. Super. 1999). "Malice is the essential element of third degree murder." *Commonwealth v. Mercardo*, 649 A.2d 946, 955 (Pa. Super. 1994) (citation omitted). "Malice exists when there is a 'wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.'" *Kling*, 731 A.2d at 147-48. "The Commonwealth may prove third degree murder by reasonable inferences drawn from the circumstances of the killing." *Bigelow*, 611 A.2d at 304. Furthermore, such

- 4 -

J-S26024-16

"malice may be inferred from the use of a deadly weapon upon a vital part of the body." *Mercardo*, 649 A.2d at 955 (citation omitted). "While this inference is well recognized in our law it will not be permitted to support a finding of malice where the direct evidence presented in the Commonwealth's case proves the contrary." *Commonwealth v. Caye*, 348 A.2d 136, 137 (Pa. 1975).

Appellant argues that there was direct evidence refuting the inference[2] of malice. This argument hinges on Thompson punching the Appellant; consequently, there was no malice on the part of the Appellant. Appellant characterizes the series of events as Thompson becoming aroused, *i.e.*, "That it was [Thompson] who had his blood pumping. That it was [Thompson] who took off his jacket and was ready to fight." Appellant's Brief at 10. The problem with this characterization is that Appellant completely ignores subsequent events. Aaron Warren testified that Thompson calmed down, said he was going to leave, and went to pick up his jacket. *See* N.T. Jury Trial, 10/14/14, at 137. It was at this point that Appellant kicked the jacket and said, "I'll kill you out here." *Id.* After this, Appellant and Thompson tussled in the bushes during which Thompson asked, "[A]re you trying to stab me bro[?]" *Id.* at 137-38. Thompson proceeded to let go of Appellant, walked over to Warren, and said, "I'm

---

[2] The inference of malice derives from Appellant's use of a deadly weapon on a vital part of Thompson's body.

- 5 -

stabbed." *Id.* at 138. The testimony of Dr. Edwin Lieberman, the assistant medical examiner, established that Thompson was stabbed five times, twice piercing vital organs.[3] *Id.* at 84-90.

This Court must look at all evidence in the light most favorable to the verdict winner. *Meadows*, 369 A.2d at 1268. As discussed above, there was sufficient evidence to show that Appellant acted with malice when he announced he would kill Thompson, and then stabbed Thompson five times, including twice in vital organs. The record contains adequate support for the verdict; therefore, we will not disturb it. Appellant's first claim fails.

Next, the Appellant asserts that the trial court erred when it failed to provide a charge of voluntary manslaughter. Pursuant to Pennsylvania Rule of Criminal Procedure 647, "No portions of the charge nor omissions from the charge may be assigned as error unless specific objections are made thereto before the jury retires to deliberate." Pa.R.Crim.P. 647(C). Furthermore, "the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge." *Commonwealth v. Pressley*, 887 A.2d 220, 225 (Pa. 2005). In the matter *sub judice*, counsel for Appellant requested a jury instruction on voluntary manslaughter; however, he did not

_____

[3] In this case, the vital organs are the lung and femoral artery.

register an objection pursuant to Pa.R.Crim.P. 647(C) before the jury retired to deliberate. **See** N.T. Jury Trial, 10/15/14, at 97, 109, 155. Accordingly, we conclude Appellant's claim was not adequately preserved for appellate review and is waived.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2016