J-S60025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LEANDRO ALEXANDER PILIER | |
| Appellant | No. 738 MDA 2019 |

Appeal from the Judgment of Sentence November 29, 2018
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0006204-2017

BEFORE:  SHOGAN, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.                **FILED DECEMBER 20, 2019**

Appellant, Leandro Alexander Pilier, appeals from his judgment of sentence of fifteen to thirty years' imprisonment for third degree murder.[1] Appellant argues that the evidence was insufficient to sustain his conviction and that the verdict was against the weight of the evidence.  We affirm.

The evidence adduced during trial demonstrates that on June 27, 2017, at approximately 3:42 p.m., Elizabeth Grisel Vaga-Tirado was shot in her head and killed at the intersection of West Princess Street and South Belvidere Avenue, in York, Pennsylvania.  This location was in a residential area during daytime hours when numerous people and cars were outside and moving around the neighborhood.  The victim had just exited Bev's Grocery Store, a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502.

business establishment on West Princess Street. Video from the grocery store's surveillance camera depicted a number of individuals at the scene.

In the area of the shooting, police officers recovered one firearm, three 9 millimeter cartridge casings and two .22 caliber cartridge casings. The shell casings did not match the firearm. The police did not perform DNA or fingerprint analysis on the shell casings.

On July 27, 2017, thirty days after the incident, Detective Paul DeHart interviewed a witness, Laquanna Smith, who lived on the 700 block of West Princess Street. Smith indicated that she wanted to get "it" off her chest. Smith indicated that she was walking up Princess Street with her children at the time of the incident and saw a car drive by Bev's Grocery Store as the victim was leaving the store. As the car drove by, Smith observed one man say "is that them?" and observed another individual say "yeah, that's them" and start shooting. Smith identified Appellant from a photo array and said that there was "no question" that he was the shooter. Smith signed a witness certification statement and indicated that her confidence in her identification of Appellant as the shooter was 100 percent.

Detective DeHart, who has twenty-one years of experience in law enforcement, observed that Smith seemed clear-minded and was well-spoken during the interview. The detective did not ask whether she was under the influence of any drugs because her recollection was clear.

During trial, however, it became evident that Smith did not want to testify. The police executed a material witness warrant to bring her to court.

Once there, she told the jury that she did not want to testify. Contrary to her statement to Detective DeHart on July 27, 2017, she testified that she was using marijuana and cocaine during 2017 and did not remember June 27, 2017. Due to her recalcitrance, the trial court permitted the Commonwealth to read her statement to Detective DeHart to the jury.

Another witness at trial, John Taylor-Williams, testified that he is currently in prison, that he knew Appellant before going to prison, and that he talked to Appellant in prison. According to Taylor-Williams, Appellant admitted that on June 27, 2017, he was on the block where the shooting took place with two other males, Hoody and Anu Johnson. A black car drove by with someone inside named Blizz, a member of a rival gang. Individuals in the car began shooting, and Appellant shot back. The victim was caught in the cross-fire. Appellant claimed that he did not intend to shoot the victim; he was only trying to prove himself to other individuals in his own gang, ONB 600. The jury heard that Taylor-Williams had numerous pending charges at the time of trial, and although he did not receive any promises, he expected to receive some consideration in his cases in return for his testimony herein.

The jury acquitted Appellant of first degree murder but found him guilty of third degree murder. On November 29, 2018, the trial court imposed sentence. On Monday, December 10, 2018, Appellant filed timely post-sentence motions challenging the sufficiency and weight of the evidence. On April 9, 2019, the trial court denied all post-sentence motions. On May 3,

2019, Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

1. Whether the trial court erred in denying Appellant's post-sentence motion for acquittal based upon the lack of sufficient evidence, as to the element of malice, to support the jury verdict of murder of the third degree?

2. Whether the trial court erred in denying Appellant's post-sentence motion for a new trial based upon the jury's verdict of murder of the third degree, specifically the finding of malice, was against the weight of the evidence?

Appellant's Brief at 4.

Appellant first argues that the evidence is insufficient to sustain his conviction for third degree murder, because the evidence fails to establish "that the Appellant was involved in the shooting and, therefore, the Commonwealth is unable to establish, with sufficient evidence, the element of malice." Appellant's Brief at 15.

When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Colon-Plaza*, 136 A.3d 521, 525–26 (Pa. Super. 2016). It is within the province of

the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. ***Commonwealth v. Tejada***, 107 A.3d 788, 792–93 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. ***Commonwealth v. Crosley***, 180 A.3d 761, 767 (Pa. Super. 2018). As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Rogal***, 120 A.3d 994, 1001 (Pa. Super. 2015).

"Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." ***Commonwealth v. Truong***, 36 A.3d 592, 597 (Pa. Super. 2012) (*en banc*). Malice is a legal term that encompasses "not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." ***Commonwealth v. Akhmedov***, 216 A.3d 307, 322 (Pa. Super. 2019). "Malice may be found where the actor consciously disregards an unjustified and extremely high risk that the actor's conduct might cause death or serious bodily injury." ***Id***. Malice may be inferred from the circumstances of the accused's conduct. ***Id***. The defendant's conduct must be such that "one could reasonably anticipate death or serious bodily injury would likely and logically result." ***Id.*** Further, the jury may infer malice

- 5 -

from the use of a deadly weapon upon a vital part of the victim's body. **Commonwealth v. Thomas**, 54 A.3d 332, 335-36 (Pa. 2012).

Our Supreme Court has held that "the quintessential example of the level of recklessness required to constitute malice is a defendant who shoots a gun into a crowd." **Commonwealth v. Packer**, 168 A.3d 161, 169 (Pa. 2017). "If a man fires a gun into a crowd and kills another it is murder, because the fact of the reckless shooting of a gun into a crowd is malice in law. That wicked and depraved disposition and that recklessness and disregard of human life is malice." **Id.**

Here, Smith's statement to Detective DeHart establishes that she saw Appellant fire his gun at a car. She said there was "no question" Appellant was the shooter. Taylor-Williams testified that Appellant told him that he shot at a rival gang member in the car, but the victim was caught in the crossfire. Appellant's act of firing a gun in the direction of a pedestrian and an occupied vehicle in a residential area during daylight hours was virtually indistinguishable from, if not identical to, the "quintessential" malicious act of firing a weapon into a crowd. **Packer**, **supra**. Thus, the evidence satisfies the element of malice.

Appellant attempts without success to liken this case to **Commonwealth v. McGuire**, 409 A.2d 313 (Pa. 1979). In that case, one or two weeks before the shooting, the victim struck his sister five or six times about the head causing injury. In May 1974, the victim punched his sister

causing a laceration of her lip which required medical attention. In June of 1974, the victim struck the defendant that resulted in defendant's hospitalization, under intensive care, for a period of one week. During the incident that lead to his death, the victim assaulted his mother, defendant, and repeatedly threatened, "I'm going to kill all you m. . . . . f. . . ., I'm going to kill all of you." A neighbor also testified that the victim broke a glass window and entered the home through the window. She saw the victim struggling with people on the third floor of the residence. She also testified that she observed and heard the victim running rampant throughout the house on a course of physical destruction and heard the defendant tell the victim to stop his rampage. Another prosecution witness said that the defendant pleaded with the victim five or six times to stop his rampage. When the victim initially hit the defendant, he fell through a glass table. His eye cut, he retreated upstairs to the bedroom. The victim then left the house and the doors were locked behind him. The victim then broke the glass window, re-entered the house and renewed his attack. At that point, the defendant went to his bedroom closet, took out an automatic handgun, walked back to where the victim was standing and pleaded with him to stop. The defendant told the victim, "[b]e like a man, and just leave the house right now." The victim responded by swinging a lamp at the defendant and by throwing the defendant's wife on a bed. The victim then hollered throughout the house, "There ain't nobody going to be alive but me." The victim's younger sister

heard the threat, jumped out of the window and ran "because he [victim] was going to come up there and kill us."  The Court held these undisputed facts negated any possible inference of malice that may have been suggested by defendant's firing the weapon at a vital part of victim's body. Accordingly, the Court reversed the defendant's conviction for third degree murder on the ground that the evidence was insufficient to prove malice.

Here, clearly unlike in **McGuire**, the victim was neither the aggressor nor the intended target.  Appellant was the aggressor who fired his gun in the innocent victim's direction while attempting to shoot a rival gang member—an act of "hardness of heart, cruelty, [and] recklessness of consequences" that establishes malice.  **Akhmedov**, 216 A.3d at 322.

Appellant's citation to **Commonwealth v. Caye**, 348 A.2d 136 (Pa. 1975), is distinguishable as well.  There, the defendant was inside of a house when an individual forced his way through the locked back door of the house. The defendant shot the intruder.  The Supreme Court reversed the defendant's conviction because there was no evidence of malice on his part.  The Court held that the attending circumstances, which tended to show that the defendant was acting in self-defense, negated any inference of malice by the defendant's use of a deadly weapon on a vital part of the body.  **Id.**, 348 A.2d at 138.  In the present case, Appellant did not raise a claim of self-defense during trial.  Nor could he, for under Smith's account, he fired the first shot

and was a willing combatant in a gunfight with a rival gang. Accordingly, Appellant's challenge to the sufficiency of the evidence fails.

Next, Appellant contends that the verdict was against the weight of the evidence. We disagree.

An appellate court's role in reviewing the weight of the evidence is limited; a new trial may only be granted where the verdict was "so contrary to the evidence as to shock one's sense of justice." ***Commonwealth v. Fletcher***, 861 A.2d 898, 908 (Pa. 2004). The trial court determines the disposition of challenges to the weight of the evidence, and an appellate court will not disturb the trial court's decision absent an abuse of discretion. ***Commonwealth v. Benson***, 10 A.3d 1268, 1274 (Pa. Super. 2010). An "abuse of discretion" is more than simply an error in judgment and instead involves an overriding or misapplication of the law or judgment that is manifestly unreasonable or results from partiality, prejudice, bias, or ill-will, as demonstrated by evidence in the record. ***Commonwealth v. Widmer***, 744 A.2d 745, 754 (Pa. 2001). As explained by our Supreme Court, "[t]he weight of the evidence is exclusively for the finder of fact, which is free to believe all, part of none of the evidence and assess the credibility of the witnesses." ***Commonwealth v. DeJesus***, 860 A.2d 102, 107 (Pa. 2004).

The trial court acted within its discretion by denying Appellant's challenge to the weight of the evidence in post-sentence motions. The Commonwealth presented evidence at trial, including Smith's interview with

Detective DeHart and Appellant's admission to Taylor-Williams, that Appellant killed an innocent pedestrian by firing his gun at a rival gangster on a well-traveled street in a residential area. The trial court properly held that the jury's verdict does not shock one's sense of justice.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2019