J-S19011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA :  IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
:
v. :
:
:
:
RENEE D. DIPIETRO :
:
Appellant :  No. 2514 EDA 2024

Appeal from the Judgment of Sentence Entered April 15, 2024
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-005471-2023

BEFORE: PANELLA, P.J.E., STABILE, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED JULY 14, 2025**

Renee D. DiPietro appeals from her judgment of sentence entered in the
Court of Common Pleas of Montgomery County for her convictions of third-
degree murder, 18 Pa.C.S.A. § 2502(c), and possession of an instrument of
crime, 18 Pa.C.S.A. § 907(a). DiPietro challenges the trial court's admission
of "other acts" testimony and the sufficiency of the evidence for the malice
element of third-degree murder. We affirm.

On June 9, 2023, Jason DiPietro, DiPietro's son, and his then girlfriend,
Madeline Myers, went to John Henry's Pub in Ardmore, Pennsylvania after
attending a concert in Philadelphia.[1] While there, Jason observed Myers at the
bar speaking to Keiran Burns in what Jason believed to be a flirtatious manner.

---

[1] For the sake of clarity, throughout this memorandum we refer to Renee D.
DiPietro, the appellant, as DiPietro, and her son and husband by their first
names.

Jason approached them and punched Burns in his face. Jason was escorted out.

Jason and Myers had an argument outside in which Myers informed Jason that she was leaving without him. Around 12:30 a.m. on June 10, 2023, Jason called his parents – first his father, Michael DiPietro, who did not answer, and then his mother, DiPietro, and asked if she could pick him up. Jason told DiPietro that he needed a ride because he was kicked out of John Henry's for punching a man whom he saw Myers kiss. Jason then walked around in the vicinity of John Henry's for about 45 minutes waiting to be picked up.

DiPietro was upset following Jason's call. Michael told DiPietro to stay home but she insisted on going with him to pick up Jason. She retrieved a cane from her bedroom which contained a sixteen-inch blade (the "cane-sword"). She also brought a baseball bat. During the approximately 30-minute car ride DiPietro was very upset.

Meanwhile, Michael Sides, a friend of Burns, was working nearby at Jack McShea's Pub when he heard about Jason punching Burns. At some point, Dan Rodgers noticed that Sides left and went outside to find him. Rodgers followed Sides, pleading for him to go back to Jack McShea's Pub. Sides saw Jason on the street right before Jason's parents arrived.

As Jason opened the door of his parents' vehicle, Sides grabbed Jason from behind and engaged in a fistfight. Michael exited the vehicle and tried to break up the fight. DiPietro exited the vehicle with her cane-sword. DiPietro swung the sheathed cane-sword at Sides and aggressively shouted, "you're

not going to do that to my son."[2] While DiPietro swung the cane-sword the sheath came off, exposing the blade, and DiPietro stabbed Sides in the left side of his chest.

Within a few seconds Sides fell to the ground bleeding. While Sides was lying on the ground incapacitated, DiPietro swung the blade at Sides' leg area and stood over him in a taunting manner. Rather than administer aid or wait for the police to arrive, DiPietro, Michael, and Jason got in the vehicle and left the scene. Before getting in the vehicle DiPietro bent the license plate in an upwards manner in an attempt to remove it. Rodgers, who witnessed the entire incident, administered aid and contacted the authorities who arrived at the scene at 1:34 a.m. Sides was transported from the scene and pronounced dead a short time later at the hospital.

The DiPietros never attempted to contact the authorities. The police later identified DiPietro as the perpetrator. Police searched her bedroom and recovered the cane-sword. On August 7, 2023, DiPietro was charged with, *inter alia*, third-degree murder and possession of an instrument of a crime.

_____

[2] The trial court stated that DiPietro struck Sides with the cane-sword multiple times in an overhead motion and following one of them the sheath came off leading to DiPietro stabbing Sides. **See** Trial Court Opinion, at 4. Rodgers testified that he saw DiPietro strike Sides with the cane-sword in an overhead motion multiple times. **See** N.T., 1/31/24, at 171-72. However, DiPietro asserts that the surveillance footage clearly shows only "a single downward swing of the sheathed cane, at which time the sheath falls off." Reply Brief, at 4; **see also** Appellant's Brief, at 37-38. For purposes of our review, we need not determine which factual scenario is more accurate. As explained *infra*, DiPietro swinging her cane-sword only once before stabbing Sides does not change the disposition of the sufficiency claim.

On January 26, 2024, oral argument was held for pre-trial evidentiary motions. Relevant to this appeal is the Commonwealth's motion to admit prior acts evidence. Specifically, the Commonwealth sought to introduce evidence of an incident that took place at DiPietro's home in April 2023. *See* N.T., 1/26/24, at 14-23. The proposed evidence was that Jason and Myers were arguing at DiPietro's home. DiPietro grabbed a baseball bat, got close to Myers's face, and told Myers a statement to the effect of "you're not going to talk to my son like that." The trial court granted the motion and later explained that "evidence of the April 2023 baseball bat incident contributed to the complete story of the case and its probative value highly outweighed the potential for unfair prejudice." Trial Court Opinion, 1/2/25, at 19 (citation omitted). Additionally, at trial, the trial court gave the jury a curative instruction that the April 2023 incident could only be considered "for the purpose of tending to describe the complete story of the events which led up to and took place on June 10, 2023." *Id.* (quoting N.T., 1/31/24, at 5).

A three-day jury trial took place from January 30, 2024 to February 1, 2024. DiPietro was found guilty of third-degree murder and possession of an instrument of crime. On April 15, 2024, the trial court imposed an aggregate sentence of twenty to forty years' incarceration. DiPietro timely filed post-sentence motions, which the trial court denied.

DiPietro timely appealed. DiPietro filed a court ordered concise statement of matters complained of on appeal and the trial court filed a Pa.R.A.P. 1925(a) opinion. *See* Pa.R.A.P. 1925(a)-(b).

- 4 -

On appeal, DiPietro challenges the trial court admitting evidence of the April 2023 incident and the sufficiency of the evidence for the malice element of third-degree murder. **See** Appellant's Brief, at 5, 22; Concise Statement of Errors Complained of On Appeal, 9/20/24 (single page).

"A trial court has broad discretion to determine whether evidence is admissible, and its ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." **Commonwealth v. Ribot**, 169 A.3d 64, 67 (Pa. Super. 2017) (citation, brackets, and internal quotation marks omitted).

> All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Even if evidence is relevant, the court may nonetheless exclude it if its probative value is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**Commonwealth v. Gross**, 241 A.3d 413, 418-19 (Pa. Super. 2020) (citations and quotation marks omitted).

Under Pennsylvania Rule of Evidence 404, evidence of other crimes, wrongs, or other acts is inadmissible to prove bad character or propensity. Pa.R.E. 404(b)(1).[3] However, such evidence "may be admissible for another

---

[3] Rule 404(b) "is not limited to evidence of crimes that have been proven beyond a reasonable doubt in court. It encompasses both prior crimes and
*(Footnote Continued Next Page)*

purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. . . . [But] this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

> To establish one of the exceptions set forth in Rule 404(b)(2), there must be a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question. Additionally, the term "unfair prejudice" in Rule 404(b)(2) means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially. When weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence.

*Commonwealth v. Gilliam*, 249 A.3d 257, 272 (Pa. Super. 2021) (internal citations, quotation marks, and brackets omitted).

"The comment to Rule 404(b)(2) explains that the rule 'contains a **non-exhaustive list of purposes**, other than proving character, for which a person's other crimes, wrongs, or acts may be admissible.'" *Commonwealth v. Carter*, 320 A.3d 140, 148 (Pa. Super. 2024) (quoting Pa.R.E. 404(b)(2), comment) (emphasis in original). One such exception recognized by Pennsylvania courts is the *res gestae* exception that permits the admission of evidence of other bad acts to tell "the complete story." *Commonwealth v. Hairston*, 84 A.3d 657, 665 (Pa. 2014) (citation omitted). Specifically, "evidence is admissible under the *res gestae* exception where it formed a part

---

prior wrongs and acts, the latter of which, by their nature, often lack definitive proof." *Commonwealth v. Saez*, 225 A.3d 169, 174 n.3 (Pa. Super. 2019) (citation omitted).

of a chain, or was one of a sequence of acts, or became part of the history of the event on trial, or was part of the natural development of the facts." *Carter*, 320 A.3d at 149 (citation and internal quotation marks omitted); *see also Commonwealth v. King*, 959 A.2d 405, 417 n.3 (Pa. Super. 2008) (bad acts evidence is admissible under the *res gestae* exception "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.") (citation omitted).

DiPietro argues that the trial court abused its discretion because the admission of evidence that DiPietro wielded a baseball bat during the April 2023 confrontation with Myers was propensity evidence and unfairly prejudicial. *See* Appellant's Brief, at 24. Additionally, DiPietro argues that there was no nexus between the two events and claims that the evidence was "*per se* inadmissib[le]" under *Commonwealth v. Bidwell*, 195 A.3d 610 (Pa. Super. 2018). *See id.* at 27-28. The Commonwealth argues that the trial court properly admitted the evidence under the *res gestae* exception because the April 2023 event with Myers provided context that helped explain DiPietro's mental state and why she brought the cane-sword and baseball bat—DiPietro wanted to confront Myers again for her perceived disrespect of her son.[4] *See* Commonwealth's Brief, at 10, 14. Further, the Commonwealth argues that

_____

[4] The Commonwealth also argues that the evidence was admissible under Rule 404(b) to show motive, intent, and malice. *See* Commonwealth's Brief, at 15-18. Because we conclude that the trial court did not err in admitting the evidence under the *res gestae* exception we need not address whether the evidence was also admissible for these other reasons.

***Bidwell*** is factually distinct and does not support DiPietro's position. ***See id.*** at 20-21. Additionally, the Commonwealth asserts that any possible prejudice was cured with the limiting instruction. ***See id.*** at 18.

The trial court thoroughly explained its reasoning for granting the Commonwealth's motion and allowing evidence of the April 2023 incident.

> [T]his evidence was necessary to present the entire context as to [DiPietro's] actions on June 10, 2023. Specifically, the circumstances of the baseball bat incident demonstrated that [DiPietro's] actions on the night of the stabbing were motivated by a need for retaliation and retribution attributable to perceived disrespect towards Jason. The baseball bat incident, and Ms. Myers' potential role in Jason's expulsion from John Henry's on the night of the stabbing, helped explain (1) why [DiPietro] was insistent upon accompanying her husband to the pick-up site, (2) why she felt compelled to bring a baseball bat and a cane-sword along for the seemingly innocuous task of picking up her son and (3) why she acted so aggressively upon Jason's involvement in a fistfight at the pick-up site. [DiPietro's] feelings of animosity towards Ms. Myers, as seen during the baseball bat incident, guided [DiPietro's] actions on June 10, 2023 and caused her to escalate a non-deadly altercation into one involving deadly force. [DiPietro's] determination to combat another instance of perceived disrespect to her son at the hands of Ms. Myers countered [DiPietro's] claim that she was acting purely out of self-defense of her son when she stabbed Mr. Sides. Thus, evidence of the April 2023 baseball bat incident contributed to the complete story of the case and its probative value highly outweighed the potential for unfair prejudice.

Trial Court Opinion at 19. Additionally, the trial court provided a curative instruction that the April 2023 incident was to be considered for the sole purpose of "describ[ing] the complete story of events which led up to and took place on June 10, 2023." ***Id.*** at 19-20 (quoting N.T., 1/31/24, at 5).

We discern no abuse of discretion by the trial court in admitting evidence of the April 2023 incident. The April 2023 incident was not merely tangential to DiPietro's actions on June 10, 2023. Jason told DiPietro that he saw Myers kiss another man. As the trial court explained, the April 2023 incident demonstrated how DiPietro's perceived disrespect of her son by Myers guided her decisions and actions on June 10, 2023, which ultimately led to DiPietro killing Sides. Thus, the trial court did not abuse its discretion.

Further, DiPietro's reliance on **Bidwell** is unconvincing. In **Bidwell**, the defendant was charged for the murder of a woman with whom he was having an extramarital affair. **See Bidwell**, 195 A.3d at 612-13. The trial court denied the Commonwealth's motion in *limine* seeking to introduce evidence of the defendant's prior violent behavior towards other women. **See id.** at 618. The Commonwealth appealed and this Court affirmed. We explained that prior abuse of other women did not establish a motive for the murder of the victim and any similarities were not so distinctive as to establish a common scheme, plan or design. **See id.** at 626-27.

**Bidwell** is not controlling, or even informative, of the instant case. The **Bidwell** Court never addressed the *res gestae* exception. Further, the nexus between the crime and prior act in this case is much stronger than in **Bidwell**. Lastly, even if **Bidwell** were factually analogous, its different procedural posture would limit its application. Therefore, DiPietro's argument fails and we find that the trial court did not abuse its discretion.

Next, we address DiPietro's sufficiency claim regarding the malice element of third-degree murder.

> When reviewing a sufficiency claim, we face a question of law. Accordingly, our standard of review is *de novo*. We view the evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor. Through this lens, we must ascertain whether the Commonwealth proved all of the elements of the crime at issue beyond a reasonable doubt.
>
> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, we may not weigh the evidence and substitute our judgment for the factfinder. Any doubts regarding a defendant's guilt may be resolved by the factfinder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances.

***Commonwealth v. Castaneira***, 322 A.3d 223, 227 (Pa. Super. 2024) (citation and brackets omitted).

"[T]hird-degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." ***Commonwealth v. Thompson***, 106 A.3d 742, 757 (Pa. Super. 2014) (citation omitted); 18 Pa.C.S.A. § 2502(c). "Malice exists where there is a particular ill-will, and also where there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty." ***Commonwealth v. Golphin***, 161 A.3d 1009, 1018 (Pa. Super. 2017) (citation omitted).

> Between the recklessness or culpable negligence necessary to support the charge of involuntary manslaughter, and the specific intent to kill which is a prerequisite of murder of the first degree,

- 10 -

there is a class of wanton and reckless conduct which manifests such an extreme indifference to the value of human life which transcends the negligent killing and reaches to the level of malice.

*Commonwealth v. Hoffman*, 198 A.3d 1112, 1119 (Pa. Super. 2018) (citation omitted). "[M]alice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that [her] actions might cause death or serious bodily harm." *Commonwealth v. Packer*, 168 A.3d 161, 168 (Pa. 2017) (citation and internal quotation marks omitted).

"Malice may be inferred by considering the totality of the circumstances." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (citation omitted). Pennsylvania courts have recognized numerous scenarios where malice can be inferred. "[M]alice is inferred from the recklessness of the defendant's conduct." *Commonwealth v. Yard*, 323 A.3d 762, 765 n.4 (Pa. 2024) (citation omitted). It may be inferred "from the failure of the defendant to seek medical care for the victim." *Commonwealth v. Lee*, 626 A.2d 1238, 1242 n.4 (Pa. Super. 1993) (citation omitted). "A fact-finder may also infer malice from the use of a deadly weapon upon a vital part of the victim's body." *Commonwealth v. Knox*, 219 A.3d 186, 195 (Pa. Super. 2019) (internal quotation marks and citations omitted).

DiPietro concedes that the evidence was sufficient to sustain a conviction of involuntary manslaughter. *See* Appellant's Brief, at 38. However, she essentially argues that she was acting in defense of her son and thus, did not have the requisite malice. *See id.* at 33-38. According to DiPietro,

***Commonwealth v. Caye***, 348 A.2d 136 (Pa. 1975), is controlling and supports her argument that the Commonwealth failed to establish the requisite malice. ***See*** Appellant's Brief at 33-35.

As the Commonwealth highlights, ***Caye*** is clearly distinguishable. In ***Caye***, our Supreme Court held that there was insufficient evidence of malice to sustain a murder conviction. ***See Caye***, 348 A.2d at 137. The only evidence in ***Caye*** was that the defendant fired a shotgun at an intruder who broke down a locked door and forced his way into the house. ***See id.*** at 138. The ***Caye*** Court concluded that this evidence alone was insufficient to support a finding of malice. ***See id.*** at 138-39.

Here, there is much more evidence, i.e., before, during, and after the encounter with Sides, to support the inference that DiPietro acted with malice. The trial court recounted the evidence, and reasonable inferences drawn from the evidence, that supported the jury's finding that DiPietro acted with malice. ***See*** Trial Court Opinion, at 8-17.

First, the trial court detailed the evidence of DiPietro's behavior leading up to the encounter with Sides.

> When viewed in a light most favorable to the Commonwealth as the verdict winner, the evidence was sufficient to establish [DiPietro] did not act in justifiable defense of her son and instead acted with malice when she stabbed Mr. Sides. [DiPietro] received a phone call from Jason at approximately 12:45 a.m. on June 10 stating only that (1) Ms. Myers had kissed another person, (2) Jason had punched this individual and (3) Jason had left the bar and needed a ride. This phone call did not mention any threats, weapons or injuries. In response to this call, [DiPietro] became upset and "wound up" and insisted on

- 12 -

accompanying Michael D. to Ardmore despite his offer to pick Jason up by himself. Although she did not hear any information from Jason regarding threats, [DiPietro] grabbed two (2) weapons in the form of a baseball bat and the cane-sword. The decision to bring these weapons demonstrated [DiPietro] was going to the pick-up site actively looking for a fight or an encounter. **The totality of the circumstances demonstrates [DiPietro's] willingness to engage in confrontation was precipitated by the mention of Ms. Myers' name and another perceived instance of disrespect towards her son**. Just two (2) months prior, [DiPietro] interpreted Ms. Myers' act of yelling profanities at her son as a sign of disrespect which prompted her to hold a baseball bat near Ms. Myers' face while exclaiming "you're not going to talk to my son like that!" [DiPietro] jumped at the opportunity to potentially confront Ms. Myers again, as evidenced by her continual commands for Michael D. to "hurry up" while driving to Ardmore and the "defensive mode" behavior she exhibited while in the vehicle.

*Id.* at 14-15 (internal citations omitted) (emphasis added).

Next, the trial court described DiPietro's encounter with Sides.

Upon the DiPietros' arrival at the pick-up site, Jason was pulled away from the Nissan Versa and a fistfight ensued in which no one observed Mr. Sides displaying any weapons or communicating any threats. At this time, Michael D. calmly attempted to step in between the two (2) men but felt no compulsion to grab either of the weapons he knew were located within the Nissan Versa considering he understood this encounter was nothing more than a fistfight. [DiPietro], however, while still in the mindset of seeking out conflict, actively injected herself into the skirmish. Specifically, [DiPietro] exited the vehicle only six (6) seconds after Mr. Sides had grabbed her son and walked over to the area of the fistfight, without any hesitation, while holding a deadly weapon in the form of a cane-sword. These actions helped escalate a standard encounter involving fisticuffs into a deadly situation. [DiPietro overhead swung the cane-sword at Sides] while uttering "you're not going to do that to my son," a statement strikingly similar to the statement she shouted towards Ms. Myers two (2) months prior. . . .

[While she swung the cane-sword at Sides, the sheath came off and she] ultimately stabbed a vital area of Mr. Sides' body,

which supports an inference of malice. When [DiPietro] ultimately stabbed Mr. Sides, only fifteen (15) seconds had elapsed from the time she had exited the Nissan Versa. In this small amount of time, **the skirmish had only escalated into a deadly encounter due to [DiPietro's] actions**. In fact, Jason had been pushed out of the way and was free of any perceived or real "danger" at the time [DiPietro] stabbed Mr. Sides.

Immediately after Mr. Sides was stabbed and clearly incapacitated while lying on the ground with blood visible on his shirt, [DiPietro] chose to take another swing with the cane-sword in the vicinity of Mr. Sides' leg and stand over him in a taunting[-]like posture. This demonstrated an extreme indifference to the value of Mr. Sides' life and served as a further indication that [DiPietro's] actions were not the result of some horrible mistake or an attempt at protection, but were instead driven by a chance at retribution for perceived disrespect.

*Id.* at 15-17 (internal citations omitted) (emphasis added).

Lastly, the trial court described DiPietro's actions after the encounter.

Following the stabbing, [DiPietro] attempted to remove the license plate from the Nissan Versa in order to avoid detection, fled from the scene, did not attempt to administer aid, failed to contact the authorities, did not attempt to flag down a police car she observed on the way back to Philadelphia, and was a party to her husband's act of parking the car in a grassy area of the family residence where it could not be seen from the street. **These additional post-stabbing actions further demonstrate an extreme indifference to human life**. Thus, the totality of the circumstances demonstrates [DiPietro] killed Mr. Sides with malice.

*Id.* at 17 (internal citations omitted) (emphasis added).

As the trial court explained, DiPietro's actions before, during, and after her encounter with Sides all support the finding that DiPietro acted with malice when she stabbed Sides with her cane-sword. Simply put, before the encounter she was upset over what Jason told her about Myers and brought

two weapons, a cane-sword and baseball bat, when she was merely asked to pick up her son; during the encounter she unnecessarily wielded a lethal blade, and after stabbing Sides she again swung the blade at him while he was laying on the ground incapacitated and bleeding; and after the encounter she failed to administer aid and sought to conceal her actions.[5] This was sufficient evidence to establish that DiPietro acted with the "conscious disregard for an unjustified and extremely high risk that [her] actions might cause death or serious bodily harm[]" to establish the malice element of third-degree murder. *Packer*, 168 A.3d at 168 (citation and internal quotation marks omitted). Therefore, DiPietro's sufficiency claim fails.

In sum, the trial court did not abuse its discretion in granting the Commonwealth's motion in *limine* for the admission of "other acts" evidence and there was sufficient evidence of malice to support her conviction of third-degree murder. Accordingly, the judgment of sentence is affirmed.

Judgment of sentence affirmed.

_____

[5] We find it notable that although DiPietro maintains that she only swung the cane-sword once *before* stabbing Sides, she does not dispute that she again swung the blade at Sides while he was lying on the ground bleeding and incapacitated.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/14/2025